**Michael Anthony KLIEBERT,**
**Plaintiff–Appellant,**

v.

**The UPJOHN COMPANY, et al.,**
**Defendants–Appellees.**

**No. 89–3406.**

United States Court of Appeals,
Fifth Circuit.

Oct. 12, 1990.

C. John Caskey, Baton Rouge, La., for Kliebert.

John J. Weigel, Vivian L. Madison, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for Upjohn Co.

Kathleen A. Manning, Henri Wolbrette, III, McGlinchey, Stafford, Cellini & Lang, New Orleans, La., for Pfizer, Inc.

Wm. F. Bologna, Habans & Bologna, New Orleans, La., for American Cyanamid Co., etc.

Joseph P. Gordon, Jr., Phillip C. Rouse, Henry B. Alsobrook, Jr., Adams & Reese, New Orleans, La., for Bristol–Myers Co. and E.R. Squibb & Sons, Inc.

ON PETITION FOR REHEARING

Before BROWN, JOLLY and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

After considering the petition for rehearing, the original opinion we filed in this case on July 19, 1990, is withdrawn and the following is substituted in its place.

Michael Kliebert (Kliebert) challenges the subject matter jurisdiction of the district court and alternatively the merits of the district court's order granting the defendants' motions for summary judgment. We conclude that the district court had no jurisdiction and vacate its order.

## I.

Michael Kliebert brought this products liability personal injury case against five pharmaceutical companies (the defendants): The Upjohn Company, American Cyanamid Company, E.R. Squibb & Sons, Inc., Bristol–Myers Company and Pfizer, Inc. Kliebert alleged that the defendants had manufactured and marketed certain tetracycline drugs ingested by him as a child, which led to discoloration of his permanent teeth as an adult. The drug tetracycline has the side effect, when taken by children age eight years and under, of staining the permanent teeth in a variety of colors.

Kliebert filed his petition in the Louisiana state court, seeking exactly $10,000 in damages. Defendants removed the case to federal district court, contending that the $10,000 plaintiff sought in his petition was not pled in good faith but was, rather, an artful effort to understate and conceal the actual amount in controversy to prevent removal. Kliebert filed a motion to remand the case to state court and, in response to defendants' argument that the *ad damnum* was not pled in good faith, Kliebert filed an affidavit offering to settle the case for $10,000. The court did not hear Kliebert's motion to remand because Kliebert withdrew the motion when his case was transferred to a trial judge who had previously rejected motions to remand two companion cases involving Kliebert's sister and her husband.

Thereafter, all five defendants filed motions for summary judgment restricted to the issue of product identification. After considering the testimony of Kliebert's childhood physician, Dr. Ronald Hardey, who acknowledged that he could not testify to prescribing any particular tetracycline drug for Kliebert, the trial judge granted the motions for summary judgment and dismissed Kliebert's action against all defendants. Kliebert filed a timely notice of appeal.

## II.

### A.

Kliebert argues first that removal jurisdiction was lacking, and second that the district court erred in granting defendants' motions for summary judgment. Because of our disposition of the first issue we need not reach the second.

Kliebert contends that the district court erred in removing this action from state court because he pled an *ad damnum* below the minimum amount necessary to support federal subject matter jurisdiction. See 28 U.S.C. § 1332.[1] Kliebert argues that he has demonstrated that this amount was pled in good faith because he agreed to settle the case for $10,000. He also points to language he included in the Petition for Damages guaranteeing that he would not seek more than $10,000 without formally amending the complaint.[2]

---

1. This case was removed to federal court in November 1987 which was prior to the increase of the requisite jurisdictional amount from a sum in excess of $10,000 to a sum in excess of $50,000 effective May 18, 1989. Diversity of citizenship is not challenged.

2. The Petition stated that:
   The *ad damnum* reflected in this Petition for Damages states an early estimate by plaintiff without consultation with an expert in the field of cosmetic dentistry, and it is possible that plaintiff will find an amendment to the *ad damnum* claim necessary in the future; however, plaintiff herein agrees that plaintiff will neither seek nor argue for nor present evidence at trial to substantiate damages in excess of those pleaded prior to formal amendment of the *ad damnum* prayer for relief herein in spite of Louisiana jurisprudential authority tending to suggest such is not necessary by a party plaintiff, this statement being made to obviate the perceived necessity by defendant herein to remove this case to the United States District Court on the argued ground that the amount in controversy is actually greater than that pleaded herein. This practice is recognized in both the United States District Court for the Middle District of Louisiana and the United States District Court for the Eastern District of Louisiana.

Defendants argue that removal was proper because the actual amount in controversy was more than $10,000. They base this contention on awards made in previously tried tetracycline cases, previous amounts sought by Kliebert's counsel in other tetracycline cases, and the language in the petition which described the injury to Kliebert's teeth as "permanent and disfiguring." They also contend that the settlement offer and the above-cited provision in the Petition do not adequately protect them from later tactics that will expose them to damages in excess of $10,000.

We agree that the offer to settle for $10,000 does not restrict Kliebert's claim to $10,000 or establish his good faith. A plaintiff's settlement offer is ordinarily less than the damages the plaintiff expects to receive if victorious at trial, because the offer is obviously discounted by the risk of an outright loss at trial. We also agree that Kliebert's guarantee that he will not seek damages in excess of $10,000 without a formal amendment affords the defendants little, if any, protection. The removal provision, 28 U.S.C. § 1446(b), was amended in 1988 to impose a one-year limitation on removal of a diversity case after commencement of the action. Judicial Improvements and Access to Justice Act, Pub.L. No. 100–702, § 1016(b)(2)(B), 102 Stat. 4642, 4669–70 (1988). Under the amended removal statute, a plaintiff can plead less than the jurisdictional amount, wait one year, formally amend the complaint to seek more than the jurisdictional amount and remain in state court because the one-year limitation precludes the defendant from removing. See 28 U.S.C. § 1446, Commentary on 1988 Revision, 3–4 (Supp. 1990). We, therefore, consider below the law governing our review of Kliebert's challenge to the court's jurisdiction and whether defendants carried their burden of showing that the actual amount in controversy was more than $10,000.

### B.

In *Grubbs v. General Electric Credit Corp.*, 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972), the Supreme Court explained the approach we must take in reviewing this case: "where after removal a case is tried on the merits without objection and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court." In the case at hand, appellants originally filed a motion to remand, but, because they withdrew the motion, we will review the case as if no such motion had been filed and test jurisdiction on the facts as they existed when judgment was entered. *See Kidd v. Southwest Airlines, Co.*, 891 F.2d 540, 546–47 (5th Cir.1990). However, because the jurisdictional facts in this case did not change from the time of removal to the time of judgment, we would reach the same result regardless of when we tested jurisdiction.

■ In determining whether jurisdiction existed at the time the district court entered judgment, we first note that the "general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed 'in good faith.'" *Horton v. Liberty Mutual Insurance Company*, 367 U.S. 348, 353, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890 *reh'g denied*, 368 U.S. 870, 82 S.Ct. 24, 7 L.Ed.2d 70 (1961) (footnote omitted). In *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938), the Supreme Court explained that a court must find lack of good faith if it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount...." In *St. Paul Mercury*, the defendant removed plaintiff's suit to federal court because the complaint stated damages in excess of the jurisdictional amount. The plaintiff later amended the complaint to state less than the jurisdictional amount but did not move to remand the case to state court and the federal district court entered judgment in favor of the plaintiff. The defendant appealed but the court of appeals refused to rule on the merits because it concluded that it did not

have jurisdiction because the jurisdictional amount was not in controversy. The Supreme Court reversed, holding that, absent bad faith, the amount stated in the plaintiff's original complaint controls the question of jurisdiction.

■ In applying the *St. Paul Mercury* rule to cases such as this one where the defendants removed a state court suit originally seeking damages *below* the federal jurisdictional amount, the defendant has the burden of establishing that the plaintiff acted in bad faith in understating his claim. In *Gaitor v. Peninsular & Occidental Steamship Company,* 287 F.2d 252, 253–54 (5th Cir.1961), we held that a defendant seeking to remove has the burden of showing that the jurisdictional amount is in controversy, but we did not clearly define the extent of that burden.

Several district courts have articulated the defendant's burden. They have held that the defendant "has the burden of proving that it does NOT appear to a legal certainty that the claim is actually for less than the requisite jurisdictional amount." *Hale v. Billups of Gonzales, Inc.,* 610 F.Supp. 162, 164 (M.D.La.1985). *See also Johnson v. Core–Vent Corporation,* No. 90 C 613, 1990 WL 51253, LEXIS 4225 (N.D.Ill. April 12, 1990); *Locklear v. State Farm Mutual,* 742 F.Supp. 679 (S.D.Ga. 1989); *Mutual First, Inc. v. O'Charleys of Gulfport, Inc.,* 721 F.Supp. 281, 282 (S.D. Ala.1989); *Steele v. Underwriters Adjusting Co.,* 649 F.Supp. 1414, 1416 (M.D.Ala. 1986). Courts have simplified the awkward negative phrasing of the burden by requiring that in order for the defendant " 'to establish the jurisdictional amount it is sufficient that there is a probability that the value of the matter in controversy' exceeds the jurisdictional amount." *Corwin Jeep Sales v. American Motors Sales,* 670 F.Supp. 591, 595 (M.D.Pa.1986), *quoting Cunningham v. Ford Motor Co.,* 413 F.Supp. 1101, 1103 (D.S.C.1976).

We are persuaded that this burden is too light. In effect, those courts allow a defendant to establish the plaintiff's bad faith understatement of his claim by demonstrating that the plaintiff would probably recover in excess of the jurisdictional amount. The allegations of a plaintiff's petition stating the amount of damages he has suffered is entitled to greater deference than this under the *St. Paul Mercury* standard. *St. Paul Mercury* teaches that the plaintiff's petition determines the amount in controversy unless the defendant demonstrates that the sum was claimed in bad faith. *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 294, 58 S.Ct. 586, 592, 82 L.Ed. 845 (1938).

To establish plaintiff's bad faith and sustain federal court jurisdiction in this case we hold, therefore, that the defendants were required to establish that the plaintiff would, if successful, recover at least the minimum jurisdictional amount. Under this standard, the trial court must be able to conclude from the pleadings or, at the most, summary judgment-type evidence, that if a jury awarded less than $10,000, the court would be required to grant a new trial. In other words, to demonstrate that the amount plaintiff sued for in state court was a bad faith understatement of his claim, the defendant must show that an award below the jurisdictional amount would be outside the permissible range of awards. Application of this standard will also simplify the trial judge's evaluation of jurisdiction. If we only required the defendant to establish that the award would "probably" exceed the jurisdictional amount, the trial judge would likely be required to conduct a mini-trial to perform the delicate weighing of conflicting evidence to determine the probable award.

### C.

■ It is generally recognized that a plaintiff may avoid federal diversity jurisdiction by pleading damages below the jurisdictional amount. See 1A J. Moore & B. Ringle, *Moore's Federal Practice* ¶ 0.157[6] at 133 (2d ed. 1989); 14A C. Wright & A. Miller, *Federal Practice and Procedure* § 3725 at 418–19 (2d ed. 1985); *St. Paul Mercury,* 303 U.S. at 294, 58 S.Ct. at 592. Defendants agree that if a plaintiff waives recovery on his claim in excess of the jurisdictional amount, federal jurisdiction may

be avoided. Therefore, in states where plaintiffs cannot recover more than they pray for in their complaints, plaintiffs who plead less than the jurisdictional amount may avoid federal jurisdiction. In such cases federal courts may not exercise jurisdiction because it is legally certain that the plaintiffs will not recover more than the jurisdictional amount. But the applicable Louisiana law does not preclude plaintiffs from recovering a larger sum than they seek in their complaints.[3] Therefore, we must consider the record to determine whether defendants have shown that it is legally certain that Kliebert will recover more than the jurisdictional amount.

■ In attempting to show that Kliebert's claims are above the jurisdictional amount, defendants rely primarily on judgments obtained in other tetracycline cases which significantly exceeded the jurisdictional amount. These include cases in which the plaintiffs were represented by Kliebert's counsel. However, defendants have failed to show that these cases are indicative of the potential damage award in this case. The awards in the cases cited by defendant range from $65,000 to $110,000, indicating that damages in tetracycline cases may vary significantly. Plaintiffs explain that the degree of discoloration of an individual's teeth can range from severe to within a normal spectrum of coloration. Defendants produced no summary judgment evidence tending to show how severe Kliebert's teeth were stained in comparison to the plaintiffs' teeth in the cited cases in which the damage awards exceeded the jurisdictional amount. More importantly, they produced no evidence from which either we or the district court could conclude that an award of less than $10,000 was below the range of awards that would be permitted to stand. Defendants, therefore, failed to establish a legal certainty that

plaintiff will recover more than $10,000 in his suit.

We are not unmindful of the tactics parties sometimes use to invoke or avoid federal jurisdiction. But federal courts have only the jurisdiction Congress grants them. Finding no current basis for jurisdiction we vacate the district court's judgment and order the case remanded to the state court.

VACATED WITH DIRECTIONS TO REMAND.

E. GRADY JOLLY, Circuit Judge, dissenting:

After considering this matter on petition for rehearing, I find that I must dissent from the majority opinion. I do so because I am convinced that irrespective of which party asserts jurisdiction, plaintiff's claim should satisfy the jurisdictional amount under the same standard of review. *See Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 354, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890 (1961) ("No matter which party brings it into court, the controversy remains the same; it involves the same amount of money and is to be adjudicated and determined under the same rules.") Under *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289–90, 58 S.Ct. 586, 590–91, 82 L.Ed. 845 (1938), original jurisdiction is effectively established by showing that the claim is *probably* in excess of the requisite jurisdictional level, *see, e.g., Jeffries v. Silvercup Bakers, Inc.*, 434 F.2d 310, 312 (7th Cir.1970); whereas under the new standard proposed by the majority opinion, removal jurisdiction is established only upon showing that the claim is *absolutely* in excess of the threshold jurisdictional amount. I find the difference between these two burdens, and the results they respectively produce, too disparate as a basis for determining jurisdiction since jurisdiction is jurisdiction: we either have jurisdiction over a particular claim or we do not, or so it seems to me.[1]

---

**3.** We do not decide how this court should treat cases arising under the current Louisiana statute which does not permit the plaintiff to allege any amount in controversy. La.Code Civ.Proc. Ann. art. 893 (West Supp.1990).

**1.** I am at a loss to understand the logic of the majority opinion in asserting that the effect of

its new standard is to even the respective burdens between the plaintiff and defendant in establishing federal jurisdiction. The majority opinion states, and correctly so, that the plaintiff asserting original jurisdiction must show to a legal certainty that the amount in controversy is not less than the jurisdictional amount; the

Indeed, this uneven application of the legal certainty test, which the majority would impose, seems to conflict with our past decisions that have stated that the standard for determining jurisdictional amount should favor "those *parties* seeking to invoke the jurisdiction of a federal district court." *Opelika Nursing Home v. Richardson*, 448 F.2d 658, 663 (5th Cir.1971) (emphasis added).

Of course, I agree that the amount in controversy should be determined from the face of plaintiff's pleading unless and until challenged as having been asserted in "bad faith." A claim of jurisdiction is asserted in bad faith if it appears "to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction." *Red Cab*, 303 U.S. at 289–90, 58 S.Ct. at 590. It would seem to me no less that plaintiff's claim is as impermissibly "colorable" when it is understated for the purpose of precluding removal jurisdiction as when it is exaggerated for the purpose of conferring jurisdiction. I would hold that a removing defendant shows plaintiff's bad faith if it shows that the claim is probably for more than the statutory amount, that is, that the damages alleged evince the probability that a reasonable jury would award more than the jurisdictional amount. This standard is clearly supported by the logic that a lawyer has at least a prima facie duty to seek the highest judgment for his client that the injury suffered will reasonably support. Although there may be valid reasons for a plaintiff choosing a state forum, which are independent of the amount of the claim, such valid reasons (e.g., allowable discovery, evidentiary questions, and jury or judge characteristics) cannot constitute good faith as to the allegation of jurisdictional amount when the jurisdictional question, and hence the specific good faith question, focuses only on whether the *amount* alleged forecloses jurisdiction; in other words, the question of bad faith for purposes of jurisdiction is whether the amount of the claim alleged in the state court complaint is "colored" to avoid federal jurisdiction, for whatever reason. If the injury claimed will reasonably support damages in an amount required by the statute, then federal jurisdiction exists.

Nonetheless, the majority concludes that when the state court pleading is shown to have understated the value of the claim, this "colored" amount is not asserted in bad faith if it is lawfully *possible* to recover less than the jurisdictional prerequisite irrespective of what the claim is reasonably worth, assuming liability. This new standard allows the purpose of the removal statute to be avoided and jurisdiction to be unscrupulously manipulated. I say this because the majority holding permits remand to the state court on an understated "colored" amount, but yet, after one year, the state court complaint can be amended to increase damages far in excess of the federal jurisdictional amount, when the statutory right of the nonresident defendant to remove to the federal court will have expired.

Notwithstanding the worrisome possibilities for abuse, the majority would justify the new burden effectively by giving deference to plaintiff's choice of forum. There is no reason to value the plaintiff's right to select a state court forum as a more worthy consideration than the nonresident de-

majority opinion further states, and correctly so, that most of the cases have held that a removing defendant must show a probability that plaintiff's claim exceeds jurisdictional limits. From a juxtaposition of these two burdens, the majority opinion concludes that plaintiff is put to a legal certainty test whereas defendant is put to a probability test and then concludes that defendant's burden is much too light when compared to plaintiff's. A proper analysis and comparison of the "legal certainty" and "probability" tests, however, reveals that these two burdens, although under different names, are actually identical. When a plaintiff who is asserting original jurisdiction is required to prove to a legal certainty that his claim is not for less than the jurisdictional amount, he is in reality only required to prove the probability of reaching the jurisdictional requisite. This is the same burden the removing defendant was required to satisfy in those cases in which the majority now rejects as too light.

fendant's statutory right to seek an impartial tribunal. Consequently, I would think, that choice of forum should not play even an indirect determining role in the jurisdictional analysis.

In sum, I would hold that the defendant's burden of persuading the court that the value of plaintiff's claim exceeds the jurisdictional amount is satisfied when, assuming liability, the defendant demonstrates that the pleadings and evidence before the court show injuries and losses to an extent that a reasonable jury would probably return a verdict in excess of the jurisdictional amount. The district court should enjoy broad discretion in making this determination. The jurisdictional inquiry imposed under this standard is no more extensive than that required under the majority's analysis. Under either standard, the trial court must determine the permissible range of a damage award. The difference is that the majority requires that the entire range of awards exceed the jurisdictional amount; I would require only that the range of awards embrace the jurisdictional amount.

Because the majority opinion attempts to formulate a burden for establishing removal jurisdiction that is substantially inconsistent with the burden for establishing original federal jurisdiction, I respectfully dissent.