**Juan GARZA, Plaintiff,**

v.

**BETTCHER INDUSTRIES, INC., Defendant.**

**Civ. A. No. 90–CV–72647–DT.**

United States District Court, E.D. Michigan, S.D.

Dec. 4, 1990.

motion to quash and the time when the defendant's answer is filed. This is another reason

OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION AND VACATING ORDER REMANDING CASE

AT A SESSION of said Court held in the Federal Building, Detroit, Michigan on Dec. 4 1990

ROSEN, District Judge.

This matter is before the Court on the Defendant's Motion for Reconsideration of the Court's *sua sponte* October 22, 1990 Order Remanding Case to the State of Michigan Circuit Court for the County of Wayne. The basis for remand was that the Court lacked federal diversity of citizenship jurisdiction, pursuant to 28 U.S.C. § 1332(a), because the amount in controversy did not appear to meet the minimum $50,000 "in controversy" requirement in Section 1332(a).

A. GROUNDS FOR RECONSIDERATION

In support of its Motion for Reconsideration, the Defendant proffers the Affidavit of its attorney, Thomas G. McNeill, which states, in pertinent part:

4. On August 27, 1990, I initiated another telephone conversation with Mr. Dib [Plaintiff's counsel], in which I indicated that I had not yet received the medical records and that I wanted to review them in considering whether to remove the case. Mr. Dib again agreed to send the medical records. In addition, *Mr. Dib affirmatively stated that he*

why failure to contest service of process in a timely manner constitutes a waiver.

*and his client would seek damages in excess of $50,000.* However, Mr. Dib stated that although he might otherwise be willing to stipulate that Plaintiff seeks damages in excess of $50,000, he was concerned that such a stipulation might cause problems if he later recommended a settlement of any amount less than $50,000.

(McNeill Affidavit, Par. 4, p. 2, Exhibit 2 to Defendant's Brief in Support of Motion for Reconsideration).

Also, the Defendant submitted in support of its Motion for Reconsideration the Plaintiff's medical records which disclose that the Plaintiff underwent four separate surgical procedures for which he now seeks to recover medical expenses.

The Court is persuaded that the sworn affidavit testimony of Mr. McNeill and the medical records together provide a sufficient factual predicate for federal diversity of citizenship jurisdiction. Consequently, the Court will grant the Defendant's Motion for Reconsideration and vacate its previous Order Remanding Case. However, the Court expresses its disapproval of defense counsel's superficial and lax approach to its obligations under 28 U.S.C. § 1446 in that the factual information set forth in the Motion for Reconsideration and McNeill Affidavit could, and should, have been submitted to the Court in the first instance in support of the Defendant's removal petition. This information was clearly available to Defendant's counsel at the time the removal petition was filed September 4, 1990.

Because the Defendant's original removal petition, and now its Motion for Reconsideration, raises important questions relating to the standards federal courts should apply in determining federal diversity of citizenship jurisdiction issues, the Court will take this opportunity to set forth its view of what it hopes will be a useful analytical approach to an area of law that has spawned many and diverse opinions, not only in district and circuit courts around the nation, but also within this District.

## B. APPLICABLE STANDARD FOR REMOVAL OF DIVERSITY OF CITIZENSHIP ACTIONS

### 1. The "Legal Certainty" Test

■ The Defendant, in its Motion for Reconsideration, has raised an issue of broad import to Defendants who seek to remove cases from state courts on the basis of diversity of citizenship jurisdiction. Essentially, the Defendant argues that, even if the Defendant were unable to state a factual predicate to establish the $50,000 jurisdictional amount, the Court would nevertheless be required to accept jurisdiction unless "it appears to a *legal certainty* that the amount in controversy is *less* than the jurisdictional amount," quoting *Pakledinaz v. Consolidated Rail Corporation,* 737 F.Supp. 47, 48 (E.D.Mich.1990) (emphasis added). Thus, Defendant argues, because this Court had insufficient evidence before it at the time it *sua sponte* remanded this case to state court to determine to a *legal certainty* whether the Plaintiff's damages are *less* than the jurisdictional amount, the Court was without authority to remand the case.

The "legal certainty" test has its genesis in *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 590–591, 82 L.Ed. 845 (1938). In that case, the Supreme Court considered whether a removed case could be remanded to state court even though the damages alleged in the state court complaint, $4,000, were greater than the $3,000 jurisdictional amount then in effect for diversity of citizenship cases. The plaintiffs amended the complaint after the case was removed to federal court. The damages claimed in the amended complaint again totalled $4,000, but the plaintiffs also attached as an exhibit to the complaint a schedule of damages which reflected that the actual loss was only $1,380.89. After a bench trial, the court awarded the plaintiffs damages in the amount of $1,162.98. On appeal the Seventh Circuit stated that the district court below should have remanded the case to state court once the district court found that the plaintiff's damages were less than the $3,000 federal jurisdictional amount.

The holding of the Supreme Court in *St. Paul* was that events subsequent to the removal of the case to federal court—the plaintiff's amending its complaint to reflect actual damages less than the jurisdictional amount and the $1,162.98 damage award by the district court—could not strip the district court of federal jurisdiction if the original claim for damages by the plaintiff in excess of the jurisdictional amount was made in good faith. *Id.*, 58 S.Ct., at 592–594. The "legal certainty" test is set forth in the *St. Paul* decision's general discussion of federal jurisdiction:

The intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts. The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, *the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.* The inability of plaintiff to recover an amount .adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. *But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed. Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.*

What already has been said, and circumstances later to be discussed lead to the conclusion that a dismissal would not have been justified had the suit been brought in the federal court. The principles which govern remand of a removed cause, [sic] more urgently require that it should not have been remanded. In a cause instituted in the federal court the plaintiff chooses his forum. *He knows or should know whether his claim is within the statutory requirement as to amount.* His good ·faith in choosing the federal forum is open to challenge not only by resort to the face of his complaint, but by the facts disclosed at trial, and if from either source it is clear that his claim never could have amounted to the sum necessary to give jurisdiction there is no injustice in dismissing the suit. Indeed, this is the court's duty under the Act of 1975. In such original actions it may also well be that plaintiff and defendant have colluded to confer jurisdiction by the method of the one claiming a fictitious amount and the other failing to deny the veracity of the averment of amount in controversy. Upon disclosure of that state of facts the court should dismiss.

*A different situation is presented in the case of a suit instituted in a state court and thence removed. There is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court or that the parties have colluded to that end. For if such were the purpose suit would not have been instituted in the state but in the federal court.*

*Id.*, at 590–591 (emphasis added).

This discussion is explicitly premised on the assumption that the amount in controversy is met by the express allegations of the plaintiff's complaint and is limited in utility to cases in which the plaintiff himself has placed the requisite jurisdictional amount in controversy by requesting damages in excess of the jurisdictional amount. In such cases, it would, of course, make sense to accord the plaintiff's own claim some weight in determining the actual amount in controversy. As noted by the Supreme Court, this is especially true where the complaint was originally filed in state court (with the requisite federal jurisdictional amount pleaded in the request for

relief) because it is highly unlikely in that instance that the plaintiff would have inflated his request for damages solely to obtain federal jurisdiction. Consequently, where the state court complaint itself states damages in an amount sufficient to obtain federal diversity of citizenship jurisdiction, by way of removal, and the defendant does in fact remove the case to federal court, it would make very good sense to require proof to a legal certainty that the plaintiff cannot recover damages equal to or greater than the jurisdictional amount. After all, it is the plaintiff who put the jurisdictional amount in controversy in the first instance, by asking for damages in that amount in his state court complaint. In this Court's view, this—and only this—is what was intended by the Supreme Court in it *St. Paul* opinion.[1]

However, recent decisions from this District, as well as other district courts, have *extended* the "legal certainty" test to cases, such as the instant case, in which the original state court complaint does *not* claim damages in excess of the federal jurisdictional amount, such as in personal injury tort cases. *See, e.g., Partlow v. Jones Motor Co., Inc.,* 736 F.Supp. 744, 746 (E.D.Mich.1990); *Kennard v. Harris Corp.,* 728 F.Supp. 453, 454 (E.D.Mich. 1989); *Pakledinaz, supra.*

Upon carefully considering this issue and the case law in this area, this Court is persuaded that the legal certainty test cannot and should not be extended to cases, such as the instant case, in which the plaintiff seeks to recover some unspecified amount that is not self-evidently greater than nor less than the jurisdictional amount. In particular, this approach fails of meaningful utility in products liability and other personal injury tort cases where non-economic damages are virtually impossible to project with any degree of certainty (much less "legal certainty") and, as a result, application of the legal certainty test would preclude remand in almost every such case. Put another way, broad application of this test would provide federal jurisdiction for virtually every conceivable personal injury lawsuit between citizens of different states.

In the present case, for example, the Plaintiff's complaint states that he seeks to recover damages in excess of $10,000.[2] The complaint does not, on its face, reveal whether the Plaintiff seeks to recover more or less than the $50,000 jurisdictional amount. In this situation, it is difficult to discern how the "legal certainty" standard can ever be met without a trial on the merits. If the burden of proof were on the defendant in a removed case to show the factual predicate for federal jurisdiction to a legal certainty, then the defendant would have to prove the plaintiff's damages to a legal certainty in order to withstand a remand to state court. The application of the legal certainty test in that case would place the defendant in the unenviable position of having to prove the plaintiff's case. Conversely, if the burden of proof were shifted to the plaintiff, then he would be required to prove to a legal certainty that his damages are less than the jurisdictional amount. For all practical purposes then, whether a federal court can exercise diversity of citizenship jurisdiction over a case would depend upon which party has the burden of proof to prove or disprove to jurisdictional amount to a legal certainty, since the parties might well prefer to fore-

---

**1.** This analysis would also obtain with equal force where the amount of damages in controversy was governed by contract and could be readily ascertained, such as in the case of a contractual liquidated damages clause, since the plaintiff would have, at least implicitly, agreed by contract to an amount sufficient to satisfy the jurisdictional requirements of Section 1332(a).

**2.** In Michigan, the amount in controversy necessary to establish jurisdiction in the state circuit courts is $10,000. However, the Michigan Court Rules specifically prohibit plaintiffs from stating a specific claim for damages if the amount sought is more than $10,000. *See* M.C.R. 2.111(B)(2). Before 28 U.S.C. § 1332(a) was amended to increase the federal jurisdictional amount in diversity of citizenship cases to $50,-000, the state court jurisdictional amount coincided with the jurisdictional amount set forth in Section 1332(a), and it was indeed easy for a defendant to establish that the amount in controversy met the federal jurisdictional requirement.

go their chosen forum rather than being forced to prove the other side's damages case.

The recent decisions from this district have attempted to resolve this difficulty be effectively shifting the burden of proof to the plaintiff (in a removed case) to prove, to a legal certainty, that the jurisdictional amount cannot be met. Thus, in *Kennard,* the court:

A defendant may remove a suit to federal court notwithstanding the plaintiff's failure to state an amount in controversy that establishes federal jurisdiction. Where the plaintiff's pleadings are insufficient to determine the amount in controversy, the court may consider the allegations of the petition for removal ... and affidavits in opposition to remand. The court may also make an independent evaluation of the monetary value of the claim. This court accordingly proceeds to make its own determination of the amount in controversy.

Plaintiff alleges that she sustained serious, permanent and progressing injuries that include pain, suffering, disability and mental anguish; loss of her voice and her ability to sing, and extreme humiliation and embarrassment. Plaintiff also claims to have incurred large sums of money for medical care and treatment and lost wages and loss of employability. She anticipates continuing medical expenses.

Defendant Harris Corporation requests that the court take judicial notice that Wayne County juries have been very liberal in awarding damages in product liability/personal injury lawsuits. Exhibit B of defendants' brief in opposition to plaintiff's motion to remand cites jury verdict results in Wayne County that have been published by the Detroit Bar Association. Those citations include nineteen products liability suits from 1986 through 1989 in which juries have awarded verdicts much larger than $50,-000. Federal courts may take judicial notice of proceedings in other courts of record. The court accordingly takes notice of those proceedings.

After careful review of the parties' pleadings and briefs in this matter, *The court finds that there is a probability that the amount in controversy exceeds $50,000. It does not appear to a legal certainty that the claim is for less than that amount.* Accordingly, plaintiff's motion to remand is DENIED.

*Kennard,* 728 F.Supp., at 454–455 (citations omitted) (emphasis added). *See also Partlow,* 736 F.Supp., at 746 ("The Court *cannot* say that it appears to a 'legal certainty' that plaintiff's suit is for less than the requisite jurisdictional amount.") (emphasis in original).

In *Partlow,* the court explained its burden-shifting approach as follows:

Plaintiffs assert that it is Defendant's burden to demonstrate to a legal certainty that the matter in controversy exceeds $50,000.00.... The Court disagrees. As alluded to earlier, defendant Jones bears the burden of articulating facts supporting removal. It is to these facts, *i.e.,* the jurisdictional facts as articulated by Jones, that the "legal certainty" test applies. *And, as further alluded to, the Court can remand this matter only if it concludes to a legal certainty that plaintiff's claim is for $50,000 or less.* The error in plaintiffs' assertion, then, is more than semantical. Rather than demonstrating that, to a legal certainty, the amount in controversy exceeds $50,000, defendant Jones is obliged to apprise the Court of facts which, if ultimately proven, *may* exceed $50,000. This Jones has done.

*Partlow,* 736 F.Supp., at 746 n. 2 (emphasis added).

Under this approach, a removing defendant may satisfy its "burden of proving the existence of federal court jurisdiction," *Id.,* at 745 (quoting *Kelly v. Drake Beam Morin, Inc.,* 695 F.Supp. 354, 355 (E.D.Mich. 1988)), by merely "articulating facts supporting removal." The clear premise of the above-quoted language is that a removing defendant may satisfy his *burden of proof* by simply *alleging* a factual basis for federal jurisdiction. Once such facts are "articulated," or alleged, the burden would

shift to the plaintiff to prove to a legal certainty that the federal jurisdictional amount is not satisfied.

Similarly, it is clear from the approach taken in *Kennard* that the only facts which a removing defendant need allege to satisfy the amount in controversy requirement, under 28 U.S.C. § 1332(a), is that the state court action is a personal injury lawsuit. The court may then infer that $50,000 is actually in controversy simply by taking judicial notice that state court juries "have been very liberal in awarding damages in product liability/personal injury lawsuits." *Kennard*, 728 F.Supp., at 454. Consequently, it follows from this analysis that virtually all personal injury lawsuits may be removed from Michigan state courts to this federal district court and may not thereafter be remanded to state court unless the plaintiff can prove to a legal certainty that the amount in controversy is less than $50,000.

This Court respectfully declines to accept the analysis of *Kennard, Partlow,* and *Pakledinaz* as it does not believe that the *defendant's burden of proof* can be met with mere allegations, particularly where, as in the *Kennard* case, those allegations consist solely of a statement that the case is a personal injury lawsuit. This analysis effectively shifts the burden of proof to the plaintiff in a removed case when, in fact, well-settled law clearly establishes that the burden of proving satisfaction of the jurisdictional requirements should be on the removing defendant.[3]

This Court perceives that the problem inherent in the analyses in these cases is the attempt to fit square pegs into round holes by extending the "legal certainty" standard to cases in which the plaintiff's state court complaint does not claim damages in excess of the federal jurisdictional amount. In this Court's view, it is inappropriate to extend the *St. Paul* analysis to any case in which the plaintiff seeks, in his state court complaint, damages below the federal jurisdictional amount or, in fact, to

any case involving unliquidated or noneconomic damages. Consequently, this Court believes it would be useful to review the authority and rationale underlying the legal certainty test, as such an analytical examination reveals that not only does the legal certainty test not have broad practical applicability beyond the specific facts of *St. Paul,* but extension of this test to other factual circumstances is not, in fact, supported by the case law, including other Supreme Court decisions.

2. *Case Law Requires the Party Asserting Federal Jurisdiction—In The Case of Removal, the Defendant—to bear the Burden of Proving Federal Jurisdiction.*

In the *St. Paul* case, the plaintiff's claim for damages was considered trustworthy, and therefore entitled to a presumption, because it conflicted with its chosen forum, the state court. In other words, the plaintiff would have been better off to have claimed a lessor or an unspecified amount of damages in order to retain its state court forum. Because the claim for damages stated in the complaint ($4,000) exceeded the requirement for federal court jurisdiction, this allegation subjected the plaintiff to removal to federal court. Thus, the plaintiff's express allegations of damages were entitled to some deference, as it was against the plaintiff's forum-selection interest to make such a request. *See also Albright v. R.J. Reynolds Tobacco Co.,* 531 F.2d 132, 135 (3d Cir.1976) (plaintiff's claim for more than federal jurisdictional amount in state court complaint subsequently removed to federal court is entitled to presumption).

In contrast, in the instant case there is no "strong presumption" that the jurisdictional amount is met because it was the Defendant who alleged, in its removal petition, that the amount in controversy is greater than $50,000. Further, this allegation was made for the express purpose of obtaining federal jurisdiction. Consequently, the *St. Paul* presumption is not applica-

---

**3.** *See Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921); *Kliebert v. Upjohn Co.,* 915 F.2d 142, 146 (5th Cir.1990); *National Organization for Women v. Mutual of Omaha Insurance Co.,* 612 F.Supp. 100, 103 (D.D.C.1985).

ble here. This circumstances was succinctly addressed by the District Court for the District of Columbia:

> Defendant points to the legal certainty test set forth in *Saint Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), to support the proposition that jurisdiction will be found to exist unless the Court finds "to a legal certainty" that the matter in controversy cannot exceed the sum or value of $10,000.... The *Saint Paul* case, however, did not address the situation in which it is *unclear* what amount of damages the plaintiff party sought as is true here with regard to the NOW claim for attorneys' fees, the NOW claim for compensation for the diversion of resources, and the individual class claims.

The Supreme Court in *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921) explained the rule in removal actions as follows:

> If a removal is effected, the plaintiff may, by a motion to remand ... take issue with the statements in the petition. If he does, the issues so arising must be heard and determined by the District Court ... *and at the hearing the petitioning defendant must take and carry the burden of proof, he being the actor in the removal proceeding.*

257 U.S. at 97, 42 S.Ct., at 37 (citations omitted). *See also Gaitor v. Peninsular & Occidental Steamship Co.*, 287 F.2d 252, 254, 255 (5th Cir.1961) (defendants below did not make such affirmative showing at the time they sought removal to federal court as is specifically required by Congress with reference to jurisdictional amount.... "[T]he key [to removal] is an affirmative showing by he who seeks entry of all the requisite factors of diversity jurisdiction, including amount in controversy...."). Thus, the defendant's attempt to vest the "legal certainty" phrase of the *St. Paul* case with a talismanic quality that prevents remand of cases where there is some doubt as to the amount to be recovered must be rejected.

*National Organization for Women v. Mutual of Omaha Insurance Co.*, 612 F.Supp. 100, 102–103 (D.D.C.1985) (emphasis added).

This Court agrees with the analysis of the district court in *NOW*. Because the Plaintiff's state-court complaint did not allege that the amount in controversy is equal to, or greater than, $50,000, the instant case is governed by the general principle that the party seeking to invoke federal jurisdiction bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount. This principle was clearly announced in *McNutt v. General Motors Acceptance Corporation*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936):

> The prerequisites to the exercise of jurisdiction are specifically defined and the plain import of the statute is that the District Court is vested with authority to inquire at any time whether these conditions have been met. *They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor. He must allege in his pleading the facts essential to show jurisdiction. If he fails to make the necessary allegations, he has no standing.* If he does make them, an inquiry into the existence of jurisdiction is obviously for the purpose of determining whether the facts support the allegations. In the nature of things, the authorized inquiry is primarily directed to the one who claims that the power of the court should be exerted on his behalf. As he is seeking relief subject to this supervision, it follows that he must carry throughout the litigation the burden of showing that he is properly in court. *The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his allegations of jurisdictional facts are challenged by his adversary in an appropriate manner, he must support them by competent proof. And where they are*

*not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence.*

*Id.*, 56 S.Ct., at 785 (emphasis added).

In *McNutt*, the Supreme Court considered whether the allegations in the complaint originally filed in federal court were sufficient to meet the amount in controversy requirement. However, in a removed case, it is the removing defendant who bears the burden of proving the factual basis for federal court jurisdiction. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921); *Kliebert v. Upjohn Co.*, 915 F.2d 142, 146 (5th Cir.1990); *NOW*, 612 F.Supp., at 103. As noted, the approach taken by the courts in *Partlow, Kennard,* and *Pakledinaz* effectively shifts the burden of proof to the plaintiff in a removed case and is, therefore, inconsistent with these principles. Accordingly, it is this Court's view that this approach cannot and should not be adopted.

This approach is also inappropriate for another important jurisprudential reason: it is contrary to the intent of Congress to *limit* the breadth of federal diversity of citizenship jurisdiction. This expression of congressional intent is well documented throughout the history of congressional actions raising the jurisdictional amount in 28 U.S.C. § 1332(a): first, in 1888, from $500 to $2,000; second, in 1911, from $2,000 to $3,000; third, in 1958, from $3,000 to $10,-000; and, most recently, in 1988, from $10,-000 to $50,000. *See, e.g.*, S.REP. No. 1830, 85th Cong., 2d Sess., *reprinted in* 1958 U.S.CODE CONG & ADMIN.NEWS 3099, 3120–3121; H.R.REP. No. 100–889, 100th Cong., 2d Sess., *reprinted in* 1988 U.S. CODE CONG. & ADMIN.NEWS 5982, 6005.

With respect to the 1988 amendment, an explicit purpose of raising the jurisdictional amount in § 1332(a) was to reduce the amount of cases in which federal jurisdiction could in obtained by way of diversity of citizenship:

## SUBTITLE B.  DIVERSITY REFORM

### BACKGROUND

*The provisions of the subtitle make amendments to reduce the basis for Federal court jurisdiction based solely on diversity of citizenship.* Diversity of citizenship refers to the jurisdiction of the Federal courts to hear matters, involving no Federal law questions, when citizens of different states are opposing parties. Diversity jurisdiction is provided for statutorily in 28 U.S.C. 1332.

Legislative efforts to eliminate or reduce diversity jurisdiction in the Federal courts come to the fore at various intervals. The Judicial Conference of the United States has long supported total abolition of diversity jurisdiction, as well as measures short of total elimination, such as eliminating in-State plaintiff suits and raising the jurisdictional amount. It has always been a controversial endeavor. *However, as inflation, the workload of the Federal courts, and the unwillingness of Congress to solve caseload problems by creating new judgeships coalesce pressures are created to review ways to reduce Federal jurisdiction.* On the other hand, in the late 1970's through the leadership of Congressman Kastenmeier the House voted to eliminate diversity jurisdiction—an effort that failed to achieve meaningful diversity reform in conference by the closest of margins.

*The activity surrounding this issue in this Congress carries on the tradition. The Subcommittee on Courts, Civil Liberties, and the Administration of Justice adopted an amendment to generally abolish diversity of citizenship. The resolution of this debate by the Committee was to increase the amount in controversy for diversity jurisdiction from $10,000 to $50,000.*

### SECTION–BY–SECTION ANALYSIS
*Section 311*

Section 311 amends 28 U.S.C. 1332 to provide for an increase in the amount in controversy required for Federal diversi-

ty of citizenship cases from $10,000 to $50,000. This change is supported by the Judicial Conference of the United States.

*The increase is justifiable on at least two grounds. First, a potential reduction of the caseload.* The last time the amount in controversy was revised was in 1958. That upward revision produced at least a short term reduction in the number of diversity cases. Second, the adjustment largely reflects inflation. As the American Bar Association noted, an "amount of approximately $35,000 would be required simply to bring us back, in real dollars, to the 1958 level." In addition, since Congress is slow to act in this area and may not revisit the issue for another three decades, it is sound policy to peg the amount in controversy at this time with a reasonable inflation cushion in mind.

*The increase in the amount in controversy to $50,000 should reduce the Federal diversity caseload by up to 40%,* according to the proponents of reform. It should be noted that in reviewing the jurisdictional allegations of a complaint that the court will apply the sanctions option available under the Federal Rules of Civil Procedure. Thus, an attorney must certify that " ... to the best of his knowledge, information and belief formed upon reasonable inquiry [the complaint] is well grounded in fact and is warranted by existing law or a good faith extension, modification, or reversal of existing law ... " A pleading that an inquiry [sic] or which is not well grounded in fact would be subject to the sanctions of Rule 11.

1988 U.S.CODE CONG. & ADMIN.NEWS, at 6005–6006 (footnotes omitted).

The legislative history to the 1958 amendment, increasing the jurisdictional amount to $10,000, discloses a similar intent:

The increase in the amount would also decrease the number of removed cases in tort, because plaintiffs would thus be permitted to allege larger damages in State courts and still remain below the minimum jurisdictional amount permitted for removal to the Federal court.

1958 U.S.CODE CONG. & ADMIN.NEWS, at 3123.

For this reason, the Court finds that the application of the legal certainty standard, as requested by the Defendant in this case, is directly contrary to the Congressional intent to limit federal diversity of citizenship jurisdiction by raising the jurisdictional amount.[4] Because of this clear conflict with the legislative purpose in setting the jurisdictional amount in Section 1332(a), the Court cannot adopt the Defendant's proposed construction of the $50,000 amount in controversy requirement in § 1332(a).

### 3. *An Alternative Analytical Framework*

Having found that the legal certainty test is not properly applicable to this case or any other in which the plaintiff's complaint does not seek damages in excess of the jurisdictional amount, it remains for the Court to decide what standards and what approach are realistically applicable to determine whether such cases are properly removable to federal court. In a very recent decision, the Fifth Circuit Court of Appeals rejected the legal certainty test (as applied in cases like *Pakledinaz, Partlow,*

---

**4.** In this regard, the Court notes that the application of the legal certainty test is somewhat contrary to Congressional intent even with respect to cases in which the plaintiff makes a *prima facie* claim for damages in excess of the federal jurisdictional amount. However, recent cases have continued to apply the *St. Paul* legal certainty test to the situation where the plaintiff files his complaint in the first instance in federal court and the complaint explicitly seeks damages in excess of the jurisdictional amount. *See, e.g., Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 97 S.Ct. 2434,

53 L.Ed.2d 383 (1977); *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188, 1195 (6th Cir.1988); *Adolph Coors Co. v. Movement Against Racism,* 777 F.2d 1538, 1544 (11th Cir.1985); *Melkus v. Allstate Ins. Co.,* 503 F.Supp. 842, 845 (E.D.Mich.1980) (Newblatt, J.). Further, the legislative history to the 1958 amendment, quoted above, reveals that Congress understood and, possibly, accepted the application of the legal certainty rule to *those* cases.

and *Kennard*), and instead adopted a much more restrictive standard:

In applying the *St. Paul Mercury* rule to cases such as this one where the defendants removed a state court suit originally seeking damages *below* the federal jurisdictional amount, the defendant has the burden of establishing that the plaintiff acted in bad faith in understating his claim. In *Gaitor v. Peninsular & Occidental Steamship Co.*, 287 F.2d 252, 253–54 (5th Cir.1961), we held that a defendant seeking to remove has the burden of showing that the jurisdictional amount is in controversy, but we did not clearly define the extent of that burden.

Several district courts have articulated the defendant's burden. They have held that the defendant has the burden of proving that it does NOT appear to a legal certainty that the claim is actually for less than the requisite jurisdictional amount. Courts have simplified this awkward negative phrasing of the burden by requiring that in order for the defendant to establish the jurisdictional amount it is sufficient that there is a probability that the value of the matter in controversy exceeds the jurisdictional amount.

We are persuaded that this burden is too light. In effect, those courts allow a defendant to establish the plaintiff's bad faith understatement of his claim by demonstrating that the plaintiff would probably recover in excess of the jurisdictional amount. The allegations of a plaintiff's petition stating the amount of damages he has suffered is entitled to greater deference than this under the *St. Paul Mercury* standard. *St. Paul Mercury* teaches that the plaintiff's petition determines the amount in controversy unless the defendant demonstrates that the sum was claimed in bad faith.

To establish plaintiff's bad faith and sustain federal jurisdiction in this case we hold, therefore, that the defendants were required to establish that the plaintiff would, if successful, recover at least the minimum jurisdictional amount. Under this standard, the trial court must be able to conclude from the pleadings or, at the most, summary judgment-type evidence, that if a jury awarded less than $10,000, the court would be required to grant a new trial. In other words, to demonstrate that the amount plaintiff sued for in state court was a bad faith understatement of his claim, the defendant must show that an award below the jurisdictional amount would be outside the permissible range of awards. Application of this standard will also simplify the trial judge's evaluation of jurisdiction. If we only required the defendant to establish that the award would "probably" exceed the jurisdictional amount, the trial judge would likely be required to conduct a mini-trial to perform the delicate weighing of conflicting evidence to determine the probable award.

*Kliebert*, 915 F.2d, at 146 (emphasis in original) (citations omitted).

Although this approach holds some attraction in its almost absolutist approach to defendants' burden—and would clearly and drastically limit Federal jurisdiction, in this Court's judgment, it goes too far. First of all, the Fifth Circuit's standard would require a removing defendant virtually to prove the plaintiff's case as to damages. A finding by the trial court in the defendant's favor on the amount in controversy issue could, potentially, be used conclusively against the same defendant if the plaintiff subsequently moves for additur of a jury verdict of less than the jurisdictional amount.

More importantly, the Fifth Circuit's analysis was based upon the fact that the original complaint in that case sought damages in a specific amount (exactly $10,000) that was less than the federal jurisdictional amount. The court held that the defendant was therefore required to show that the amount claimed in the complaint "was a bad faith understatement of his claim." The court expressly noted that the same analysis might not apply under the amended Louisiana state statute which (like the current Michigan Court Rule, M.C.R. 2.111(B)(2)) prohibits a tort claimant from stating a specific amount in controversy. *Id.*, at 147 n. 3.

This Court believes that an appropriate standard of proof can be derived directly from the Supreme Court's decision in the *McNutt* case:

> The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his allegations of jurisdictional facts are challenged by his adversary in an appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, *and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence.*

*McNutt*, 56 S.Ct., at 785 (emphasis added).

In other words, the party invoking federal diversity of citizenship jurisdiction—in a removed case such as this, the Defendant must prove that it is "more likely than not" that the amount in controversy exceeds $50,000. *See Sterling Velsicol Chemical Corp.*, 855 F.2d 1188, 1201 (6th Cir.1988); *South–East Coal Co. v. Consolidation Coal Co.*, 434 F.2d 767, 778 (6th Cir.1970). In the Court's view, this "preponderance of evidence" standard does not require the Defendant to prove the amount in controversy "to a legal certainty." Nor need the Defendant prove conclusively that to award the Plaintiff less than the jurisdictional amount would be "outside the range of permissible awards." Rather, the Defendant must allege facts sufficient to establish that the Plaintiff would more likely than not recover more than the jurisdictional amount, assuming the failure of all the Defendant's affirmative defenses.

Although the burden of proof of establishing jurisdiction in removed cases rests with the defendant, the Supreme Court in *McNutt* made clear that the Court must make an independent inquiry into the factual basis for its own jurisdiction, and this duty is codified in 28 U.S.C. § 1447(c):

## § 1447. Procedure after removal generally

\* \* \* \* \* \*

(c) ... If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded....

28 U.S.C. § 1447(c).

In the instant case, the Defendant's initial removal petition merely stated, as if reciting some magical incantation, "the amount in controversy exceeds $50,000," without identifying any specific factual allegations or provisions in the Complaint which might support that proposition, nor providing the Court with any independent underlying factual basis from which the Defendant actually drew this conclusion. This sort of conclusory allegation of the jurisdictional amount in a removal petition should, and will, universally provoke further inquiry on the Court's part, or even *sua sponte* remand as is the Court's statutory duty, under § 1447(c). *See Shadley v. Miller*, 733 F.Supp. 54, 55 (E.D.Mich.1990) ("the court must strictly construe the notice of removal and resolve all doubts against removal").

Yet, the Court does not believe that every removal of a diversity of citizenship case need involve protracted inquisitions as to the amount in controversy. Instead, the preferable approach would be for the Defendant to set forth *in the removal petition itself* the underlying facts supporting its assertion that the amount in controversy exceeds $50,000. Thus, in the instant case, if the Defendant had set forth in the removal petition the facts set forth in its Motion for Reconsideration—i.e., that the Plaintiff's attorney affirmatively stated that he would seek more than $50,000 in damages, and that the Plaintiff's medical records revealed that he had undergone four separate surgical procedures for his injury—the Court would have been satisfied that it was more likely than not that the $50,000 jurisdictional amount was actually *in controversy.* These facts, as set forth in the Defendant's Motion for Reconsideration, lead the Court to believe that the Defendant can meet its burden of prov-

ing, by a preponderance of the evidence, that the actual amount *in controversy* here exceeds $50,000.

As noted above, the facts necessary to support the jurisdictional amount were clearly available to the Defendant at the time it apparently chose to omit them from the removal petition. The Court recognizes that justice requires that it consider these facts in the context of the Defendant's Motion for Reconsideration, and the Court is satisfied that it must vacate its previous Order Remanding Case. *See Kelly v. Kentucky Oak Mining Co.,* 491 F.2d 318 (6th Cir.1974) (it was error for the district court to dismiss case *sua sponte* for lack of jurisdiction without permitting the plaintiff to amend the complaint to correct technical defects). The Court only notes that the Defendant could easily have avoided this unnecessary duplication of effort if it had not withheld from the Court the underlying jurisdictional facts at the time it filed its removal petition.

Thus, the Court finds that it was fully within its authority, under 28 U.S.C. § 1447(c), to remand this case to state court because of the lack of anything other than conclusory allegations in the original removal petition. Defendant's counsel, and others similarly situated, are hereby forewarned that the Court will continue to adhere to this procedure in the future. However, because the facts submitted by the Defendant in support of its Motion for Reconsideration have satisfied the Court that it is more likely than not that the amount in controversy in this case exceeds $50,000, the Court will grant the Defendant's Motion for Reconsideration and vacate its Order Remanding Case.

With respect to the broader issues addressed in this opinion, the Court closes by summarizing its analysis and holding: (1) The Court rejects the "legal certainty" test as neither supported by precedent, practicality, nor congressional purpose; and (2) The Court adopts a test requiring (a) defendant in a removed case to bear the burden of proof as to the jurisdictional requirements, including amount in controversy; and (b) defendant must meet this burden

by showing that it is more likely than not that the jurisdictional requirements set forth in Section 1332 are met, including that the $50,000 jurisdictional requirement in Section 1332(a) is actually in controversy.

For the reasons set forth herein;

NOW THEREFORE;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the Defendant's Motion for Reconsideration of the Order Remanding Case is GRANTED; and

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Court's October 22, 1990 Order Remanding Case is hereby VACATED.

