Richard M. SANCHEZ, Plaintiff–
Appellant,

v.

MONUMENTAL LIFE INSURANCE
COMPANY, Defendant–
Appellee.

No. 94–56651.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 8, 1996.

Decided Sept. 11, 1996.

As Amended on Denial of Rehearing
and Rehearing En Banc Dec. 10, 1996.

Sharon J. Arkin, Shernoff, Bidart & Darras, Claremont, California, the plaintiff-appellant.

Richard B. Tricker, Radcliff, Brestoff, Frandsen, Tricker & Dongell, Los Angeles, California, for defendant-appellee.

### ORDER

The Opinion filed September 11, 1996, slip op. 11747, and appearing at 95 F.3d 856 (9th Cir.1996), is amended as follows:

1. At slip op. 11762, in the second sentence of the first full paragraph; 95 F.3d

at 863, in the second sentence of the first full paragraph, change "That provision provides for treble damages for "[u]nfair or deceptive practices against senior citizens or disabled persons." to "That provision provides for trebling *punitive* damages for "[u]nfair or deceptive practices against senior citizens or disabled persons."

With this amendment, the panel has voted unanimously to deny the petition for rehearing and to reject the suggestion for rehearing en banc.

The full court has been advised of the suggestion for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed.R.App.P. 35.

The petition for rehearing is DENIED and the suggestion for rehearing en banc is REJECTED.

Before: HALL, O'SCANNLAIN and KLEINFELD, Circuit Judges.

### OPINION

O'SCANNLAIN, Circuit Judge:

We must decide the proper test to apply to establish subject matter jurisdiction over a removed diversity case in which the plaintiff's state court complaint fails to specify whether the amount in controversy exceeds $50,000.

### I

In March 1989, appellant Richard Sanchez, a welder, filed a claim for "permanent total disability" benefits from Monumental General Insurance Co., the insurance carrier for Sanchez's group policy.[1] The claim was based on an injury which Sanchez allegedly suffered in January 1988. With his claim Sanchez submitted a physician's statement which indicated that any total disability which Sanchez may have suffered as a result of his injury had ended by October 1988. Under the terms of Sanchez's insurance poli-

---

1. The appellee in the present case, Monumental Life Insurance Co., assumed the coverage on Sanchez's policy from Monumental General in 1992. Monumental General and Monumental Life are referred to collectively herein as "Monumental."

cy, Sanchez was not entitled to benefits for "permanent total disability" unless he was (1) prevented from working in any or all occupations (2) for a continuous period of at least twelve months. Because Sanchez's claim failed to satisfy this standard, Monumental sent him a letter on March 31, 1989, informing him that "no benefits would be payable." [2]

In early August 1989, Sanchez submitted a second claim for benefits to Monumental. In this second claim, he stated that his total permanent disability had commenced on November 16, 1988. However, the attending physicians' statement attached to this second claim stated that Sanchez could be expected to return to work by August 28, 1989. Accordingly, on October 20, 1989, Monumental sent Sanchez another letter notifying him that his condition did not qualify as a "total permanent disability," and that no benefits would be payable. Monumental did, however, invite Sanchez to submit additional medical information if it became available.

Sanchez apparently did not contact Monumental again until September 21, 1992, some three years later, at which time he forwarded to Monumental a copy of an award of Social Security disability benefits which he had received in July 1992. The Social Security award letter notified Sanchez that he was entitled to receive Social Security benefits as of September 30, 1990. Based on this award, Sanchez again demanded benefits from Monumental. In October 1992, Monumental wrote to Sanchez's attorney and requested that Sanchez forward to Monumental copies of the medical records which Sanchez had submitted to the Social Security Administration in support of his claim. When Sanchez did not respond, Monumental sent another letter in January 1993 and again requested the records.

Sanchez admits that he never responded to these letters. Instead, in December 1993 he filed suit against Monumental in California state court. In his complaint, he alleged state law causes of action for (1) breach of the implied covenant of good faith and fair dealing, (2) breach of contract, and (3) a violation of California Business and Professions Code § 17200 et seq. (West 1987 & Supp.1996) (proscribing unfair competition). Sanchez's complaint did not specify a particular amount of damages, but merely sought damages "in an amount to be determined according to proof at the time of trial." Monumental timely removed the case on the grounds of diversity jurisdiction. Once in federal court, Sanchez filed a motion to remand the case to state court. He argued that the amount in controversy did not exceed $50,000, and that the court therefore lacked diversity jurisdiction under 28 U.S.C. § 1332.[3] The district court denied Sanchez's motion in April 1994.[4] Sanchez did not attempt an interlocutory appeal.

The district court subsequently granted summary judgment to Monumental on each of the three causes of action in Sanchez's complaint. The court concluded that each claim had accrued by October 20, 1989, the date on which Monumental sent Sanchez its second letter denying his request for benefits. Based on that accrual date, the court concluded that each claim was barred by the applicable statute of limitations. Sanchez timely appealed.

## II

Sanchez argues that we must vacate the district court's judgment and order the case remanded to state court because the amount in controversy does not exceed $50,000. Citing *Gaus v. Miles, Inc.*, 980 F.2d 564 (9th Cir.1992) (per curiam), he argues that Monumental has the burden of proof on this issue, and claims that under *Gaus* Monumental must prove "to a legal certainty" that the amount in controversy exceeds $50,000. Sanchez also asserts that Monumental cannot

---

**2.** Sanchez's complaint alleged that the definition of "permanent total disability" outlined in the policy violated California law.

**3.** *See* 28 U.S.C. § 1332(a) (1993) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest

and costs, and is between—(1) citizens of different states. . . ."). Diversity of citizenship is not at issue in this appeal.

**4.** The court's order contained no statement of reasons.

meet this burden of proof, because his complaint does not allege a specific amount of damages.

▉ Relying on *Grubbs v. General Elec. Credit Corp.*, 405 U.S. 699, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972), and *Sorosky v. Burroughs Corp.*, 826 F.2d 794 (9th Cir.1987), Monumental responds that Sanchez has misstated the issue on appeal. Monumental points out that in *Grubbs*, the Supreme Court held that

> where after removal a case is tried on the merits without objection and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case *had it been filed in that court.*

*Grubbs*, 405 U.S. at 702, 92 S.Ct. at 1347 (emphasis added). Monumental also correctly points out that in *Sorosky*, we held that the *Grubbs* rule applies in cases in which a plaintiff has "not preserved his objection to removal because he failed to seek an interlocutory appeal of the district court's order denying his motion to remand." *Sorosky*, 826 F.2d at 798. Because Sanchez did not seek an interlocutory appeal of the denial of his remand motion, Monumental correctly asserts that *Grubbs* applies here.

Monumental goes on, however, to assert that because this appeal is controlled by *Grubbs*, Monumental does not have the burden of proof in this appeal on the amount in controversy. Monumental's argument appears to be premised on our observation in *Gaus* that

> [i]n diversity cases, where the amount in controversy is in doubt, the Supreme Court has drawn a sharp distinction between original jurisdiction and removal jurisdiction: *[I]n cases brought in the federal court ... [i]t must appear to a legal certainty that the [plaintiff's] claim is really for less than the jurisdictional amount to justify dismissal....* A different situation is presented in the case of a suit instituted in a state court and thence removed. There is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a

federal court or that the parties have colluded to that end.

*Gaus*, 980 F.2d at 566 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–90, 58 S.Ct. 586, 590–91, 82 L.Ed. 845 (1938)) (emphasis added). Although it is not entirely clear from Monumental's brief, it appears that Monumental has combined the above quotations from *Grubbs* and *Gaus*, and has concluded that because the issue in this appeal is whether the district court would have had original jurisdiction of the case "had it been filed in that court," *Grubbs*, 405 U.S. at 702, 92 S.Ct. at 1347, "[i]t must appear to a legal certainty that [Sanchez's] claim is really for less than the jurisdictional amount to justify dismissal." *Gaus*, 980 F.2d at 566.

For a variety of reasons, we conclude that Sanchez and Monumental have each misstated the appropriate standard. As an initial matter, the "legal certainty" standard to which Sanchez refers (and to which Monumental apparently refers) is simply inapplicable in this case. The genesis for the "legal certainty" test was the Supreme Court's opinion in *St. Paul Mercury*, 303 U.S. at 288–90, 58 S.Ct. at 590–91. In *St. Paul Mercury*, the plaintiffs filed suit in state court alleging that the defendant had failed to fulfill certain contractual obligations. The plaintiffs' complaint alleged $4,000 in damages, which exceeded the $3,000 amount then required for the exercise of diversity jurisdiction. After the defendant removed the case, the plaintiffs filed an amended complaint which again sought $4,000 in damages. However, the plaintiffs also attached an exhibit to the complaint which showed that the actual loss was only $1,380.89. The district court entered judgment for the plaintiffs in the amount of $1,162.98, and the defendants appealed. The Seventh Circuit vacated the judgment, finding that the district court should have remanded the case once it became apparent that the actual loss claimed by the plaintiffs failed to reach the required jurisdictional amount. The Supreme Court in turn reversed the court of appeals, holding that subsequent amendment of the complaint after the case was removed did not divest the district court of jurisdiction. The "legal cer-

tainty" test originated in the following portion of the Court's analysis:

> The intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts. The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, *the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.* The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, *to a legal certainty,* that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

*Id.* at 288–89, 58 S.Ct. at 590 (emphasis added).

■ As explained in Judge Rosen's excellent opinion in *Garza v. Bettcher Indus., Inc.,* 752 F.Supp. 753 (E.D.Mich.1990), this discussion

> is explicitly premised on the assumption that the amount in controversy is met by the express allegations of the plaintiff's complaint *and is limited in utility to cases in which the plaintiff himself has placed the requisite jurisdictional amount in controversy by requesting damages in excess of the jurisdictional amount.* In such cases, it would, of course, make sense to accord the plaintiff's own claim some weight in determining the actual amount in controversy. As noted by the Supreme Court, this is especially true where the complaint was originally filed in state court (with the requisite federal jurisdictional amount pleaded in the request for relief) because it is highly unlikely in that in-

stance that the plaintiff would have inflated his request for damages solely to obtain federal jurisdiction. Consequently, where the state court complaint itself states damages in an amount sufficient to obtain federal diversity of citizenship jurisdiction, by way of removal, and the defendant does in fact remove the case to federal court, it would make very good sense to require proof to a legal certainty that the plaintiff cannot recover damages equal to or greater than the jurisdictional amount.

*Id.* at 755–56 (emphasis added). We agree with this reasoning, and with *Garza*'s conclusion that the *St. Paul Mercury* "legal certainty" test is applicable in two types of cases: (1) those brought in the federal court in which the plaintiff has filed a good faith complaint alleging damages in excess of the required jurisdictional minimum and (2) those brought in the state court in which the plaintiff has filed any complaint alleging damages in excess of the required federal jurisdictional minimum. *See also Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1357 n. 8 (11th Cir.1996); *De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1409 (5th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 180, 133 L.Ed.2d 119 (1995); *Gafford v. General Elec. Co.,* 997 F.2d 150, 160 (6th Cir.1993). Because Sanchez's complaint does not allege damages in excess of $50,000, we reject Sanchez's argument (and Monumental's apparent argument) that the "legal certainty" rule is somehow applicable in this case.

It is true that some federal courts have in fact applied a variation of the "legal certainty" test in removed cases where the plaintiff's complaint does not specify a particular amount of damages. *See, e.g., Hale v. Billups of Gonzales, Inc.,* 610 F.Supp. 162 (M.D.La.1985). In *Hale,* the plaintiff filed suit in state court seeking a declaratory judgment. The defendants removed the case, and the plaintiffs moved to remand to state court on the grounds that the amount in controversy requirement was not satisfied. The court analyzed the issue as follows:

> In determining whether the requisite jurisdictional amount is present, the Court must apply the "legal certainty" test which was set forth [in *St. Paul Mercury* ].

When the jurisdictional amount is challenged, the party invoking the jurisdiction of the federal court *has the burden of proving that it does NOT appear to a legal certainty that the claim is actually for less than the requisite jurisdictional amount.* Thus, in removal cases, it is incumbent upon the defendant to make the above showing.

*Id.* at 163–64 (citations omitted) (emphasis added). *Hale* thus applied what has been aptly denominated the "converse legal certainty test." *De Aguilar,* 47 F.3d at 1411. Other federal district courts have applied the same test in similar cases. *See, e.g., Atkins v. Harcros Chemicals, Inc.,* 761 F.Supp. 444, 446 (E.D.La.1991); *Locklear v. State Farm Mutual Auto. Ins. Co.,* 742 F.Supp. 679 (S.D.Ga.1989); *Partlow v. Jones Motor Co., Inc.,* 736 F.Supp. 744, 746 (E.D.Mich.1990); *see also* 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3725 (Supp.1995) (collecting cases applying various tests); *Gafford,* 997 F.2d at 158 (same).

■ In our view, application of the "converse legal certainty" test in cases where the plaintiff's complaint does not specify a particular amount of damages is inappropriate, because it may result in an unwarranted expansion of federal diversity jurisdiction. For example, if a plaintiff actually seeking $10,000 in damages were to file a complaint in state court which did not specify the amount of damages sought, and the defendant were to then remove the case to federal court, application of the "converse legal certainty" test in these circumstances would force the federal court to exercise jurisdiction even if there was only a *legal possibility* that the amount in controversy exceeded $50,000. This result is clearly inconsistent with the limits which Congress has placed on both removal and diversity jurisdiction. *See, e.g., St. Paul Mercury,* 303 U.S. at 288, 58 S.Ct. at 590 ("The intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts."); *Gaus,* 980 F.2d at 566 ("We strictly construe the removal statute against removal jurisdiction."); *Rosenboro v. Kim,* 994 F.2d 13, 19 (D.C.Cir.1993) ("Con-

gress, in amending § 1332 to raise the amount in controversy limit to $50,000, sought to stem the tide of diversity litigation in the federal courts.") (citation omitted). Accordingly, we agree with the circuit courts which have recently rejected this standard for precisely this reason. *See, e.g., Gafford,* 997 F.2d at 155–56 n. 2 ("the defendant is to be held to a higher burden than showing a mere possibility that the jurisdictional amount is satisfied"); *De Aguilar,* 47 F.3d at 1411 ("converse legal certainty" test is "too permissive").

We conclude that the test which should be applied here is that suggested by our decision in *Gaus.* In *Gaus,* we held that in removed diversity cases where the amount in controversy is in dispute and where it is unclear from the plaintiff's complaint whether the plaintiff is seeking more than $50,000, "the defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount." *Gaus,* 980 F.2d at 566–67 (citing *Garza,* 752 F.Supp. at 763). In so holding, we relied on the Supreme Court's decision in *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). In *McNutt,* the Court stated that:

> The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, *and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence.*

*Gaus,* 980 F.2d at 567 (quoting *McNutt,* 298 U.S. at 189, 56 S.Ct. at 785) (emphasis added by *Gaus* ).

■ Although we did not explicitly hold in *Gaus* that a removing defendant must prove

the existence of the amount in controversy "by a preponderance of evidence," it is clear from our reliance on *McNutt* that this was our intent. *See Gafford,* 997 F.2d at 158 (citing *Gaus* as *"seeming* to apply" the preponderance of evidence standard) (emphasis added).[5] Accordingly, we hold that in cases where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $50,000. Under this burden, the defendant must provide evidence establishing that it is "more likely than not" that the amount in controversy exceeds that amount. *See, e.g., Tapscott,* 77 F.3d at 1357 (applying "preponderance of evidence" test in similar circumstances because it strikes "[t]he proper balance between a plaintiff's right to choose his forum and a defendant's right to remove, without unnecessarily expanding federal diversity jurisdiction"); *De Aguilar v. Boeing Co.,* 11 F.3d 55, 58 (5th Cir.1993) (same); *Gafford,* 997 F.2d at 158 (same); *Garza,* 752 F.Supp. at 763 (same).

■ Finally, we also reject Monumental's argument that *Gaus* is inapplicable here because this case is controlled by *Grubbs.* Although the Supreme Court did state in *Grubbs* that the relevant question which appellate courts in our position should ask is whether the district court would have had jurisdiction "had [the case] been filed in that court," *Grubbs,* 405 U.S. at 702, 92 S.Ct. at 1347, we do not believe that the Court intended by this statement to suggest that the *St. Paul Mercury* "legal certainty" standard, which we would normally apply in diversity cases filed in federal court, should be applied in all cases controlled by *Grubbs.* Rather, the Court's point was simply that a plaintiff who fails properly to contest removal of a case may not, in a subsequent appeal following a ruling on the merits, object to that judgment on the grounds that the defendant failed to comply with the removal *procedures.* This point is emphasized by the fact that *Grubbs* relied on *Mackay v. Uinta Dev. Co.,*

229 U.S. 173, 33 S.Ct. 638, 57 L.Ed. 1138 (1913), in support of its holding:

> [R]egardless of the manner in which the case was brought or how the attendance of the parties in the United States court was secured, there was presented to the Circuit Court a controversy between citizens of different States in which the amount claimed by one non-resident was more than $2,000, exclusive of interest and costs.... [I]f there was any *irregularity in docketing the case or in the order of the pleadings* such an irregularity was waivable, and *neither it nor the method of getting the parties before the court operated to deprive it of the power to determine the cause.*

*Grubbs,* 405 U.S. at 703, 92 S.Ct. at 1348 (quoting *Mackay,* 229 U.S. at 176–77, 33 S.Ct. at 639) (emphasis added). Similarly, we recently noted that in cases controlled by *Grubbs,* "[t]he issue becomes not whether the removal was proper, but whether the district court had jurisdiction *at the time it issued its judgment." Rains v. Criterion Sys., Inc.,* 80 F.3d 339, 342 (9th Cir.1996) (citing *Grubbs,* 405 U.S. at 705, 92 S.Ct. at 1349 ("the requirement that jurisdiction exist at the time of judgment ... is satisfied here")) (emphasis added). In deciding whether the district court had jurisdiction at the time it entered its judgment, the relevant test is the "preponderance of the evidence" standard described above. Accordingly, we reject Monumental's argument that it does not have the burden of proof in this appeal on the amount in controversy.

### III

We now turn to the question of whether Monumental has met its burden of proof. Monumental's argument that the amount in controversy in this case exceeds $50,000 proceeds as follows. First, Monumental notes that Sanchez sought contract damages in the amount of $12,500 (representing 25 monthly payments of disability benefits at $500 per month). Second, Monumental notes that Sanchez sought treble punitive damages pur-

---

**5.** Because the defendant in *Gaus* "offered no facts whatsoever to support the court's exercise of jurisdiction," *Gaus,* 980 F.2d at 567, but instead "simply allege[d]" that the amount in con- troversy exceeded $50,000, there was no need for the court to decide in *Gaus* which standard of proof was appropriate: the defendant necessarily lost regardless of the evidentiary standard.

suant to Cal.Civil Code § 3345 (West Supp. 1996). Monumental argues that section 3345 allows for the trebling of the contract damages of $12,500, resulting in a total claim under section 3345 of $37,500. Adding this figure to the $12,500 in contract damages, Monumental arrives at a figure of exactly $50,000. Monumental then points out that Sanchez sought certain unspecified damages for emotional distress and attorneys' fees, and concludes that because those damages necessarily exceed zero, Sanchez's claim exceeds $50,000.

■ Monumental's argument is premised on a fundamental misunderstanding of section 3345. That provision provides for trebling *punitive* damages for "[u]nfair or deceptive practices against senior citizens or disabled persons." In relevant part, it states that:

> (b) Whenever a trier of fact is *authorized by a statute to impose either a fine, or a civil penalty or other penalty,* or any other remedy the purpose or effect of which is to punish or deter, and the amount of the fine, penalty, or other remedy is subject to the trier of fact's discretion, the trier of fact shall consider all of the following factors, in addition to other appropriate factors, in determining the amount of fine, civil penalty or other penalty, or other remedy to impose. Whenever the trier of fact makes an affirmative finding in regard to one or more of the following factors, *it may impose a fine, civil penalty or other penalty, or other remedy in an amount up to three times greater than authorized by the statute,* or, where the statute does not authorize a specific amount, up to three times greater than the amount the trier of fact would impose in the absence of that affirmative finding. . . .

Cal.Civil Code § 3345 (West Supp.1996) (emphasis added). On its face, therefore, this statute allows for the trebling, in certain cases involving senior citizens and disabled individuals, of *fines or penalties* which are otherwise "authorized by a statute." Monu-

mental's argument that this provision would allow Sanchez to treble the otherwise available *contract* damages is erroneous. Because Monumental's calculation of the amount in controversy is entirely premised on a misinterpretation of this statute, it has failed to meet its burden of proof.

■ We note that under his third claim for relief, Sanchez has sought an injunction forcing Monumental to disgorge all premiums which have been paid to Monumental by any California resident for insurance policies issued by Monumental which apply the definition of "total permanent disability" which Sanchez believes is illegal. Citing *Ridder Bros., Inc. v. Blethen,* 142 F.2d 395 (9th Cir.1944), Monumental suggests that the amount in controversy requirement may be satisfied under this third count alone, because under *Ridder* the requirement is satisfied if either party can gain or lose the jurisdictional amount. *See Ridder,* 142 F.2d at 399 (holding that for purposes of calculating amount in controversy, "[t]he value of the thing sought to be accomplished by the action may relate to either or any party to the action") (citation, internal quotation marks omitted); *see also Government Employees Ins. Co. v. Lally,* 327 F.2d 568, 569 (4th Cir.1964) (citing *Ridder* in support of proposition that "the amount in controversy is the pecuniary result to either party which that judgment would produce").[6]

However, Monumental has provided us with absolutely no evidence which would allow us to determine the extent of the loss which it might incur if an injunction is granted forcing it to disgorge the premiums. Moreover, the full extent of Monumental's argument on this point is that "the cost to Monumental *may* be tremendous," and that "*[a]rguably,* the jurisdictional minimum has been satisfied by Sanchez's third cause of action alone." (Emphases added). In light of the equivocal nature of Monumental's argument, and in light of the absence of record evidence on this point, Monumental has failed to satisfy its burden of proof.

---

**6.** *Ridder* thus rejected the "plaintiff-viewpoint" rule, which states that courts attempting to determine the value of a claim for purposes of the amount in controversy requirement should look only to the benefit to the plaintiff, rather than to the potential loss to the defendant. *See* Wright,

Miller & Cooper, *supra,* § 3703 (discussing "plaintiff-viewpoint" rule); *but see Snow v. Ford Motor Co.,* 561 F.2d 787 (9th Cir.1977) (declining to apply *Ridder* in class action suit seeking damages and injunctive relief).

## IV

Because Monumental has failed to establish by a preponderance of the evidence that the amount in controversy in this case exceeds $50,000, we vacate the district court's judgment and remand the case to the district court with instructions to enter an order remanding the case to state court.

*REVERSED AND REMANDED.*