264 F.3d 952 (9th Cir. 2001)
 IN RE: FORD MOTOR COMPANY/CITIBANK (SOUTH DAKOTA), N.A., CARDHOLDER REBATE PROGRAM LITIGATION
JOHN B. MCCAULEY, INDIVIDUALLY AND ON BEHALF OF ALL PERSONS SIMILARLY SITUATED; GERALD ESSIG; THOMAS WALTERS, ON BEHALF OF THEMSELVES AND ON ALL OTHERS SIMILARLY SITUATED; JEFFREY SCOTT MERRICK; JOHN LAGROU; HOWARD S. HORNREICH; LYNETTE M. HORNREICH, HUSBAND AND WITH ON THEIR OWN AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; AND RICKY A. COPELAND, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS-APPELLEES,
v.
FORD MOTOR COMPANY, A DELAWARE CORPORATION, CITIBANK (SOUTH DAKOTA), N.A., DEFENDANT-APPELLANT,
FORD MOTOR COMPANY, A DELAWARE CORPORATION; CITIBANK (SOUTH DAKOTA), N.A.; CITIBANK, A NEW YORK CORPORATION; DOES 1 THROUGH 10 INCLUSIVE; FORD MOTOR COMPANY, A CORPORATION, DEFENDANTS.
 No. 99-36115,, 99-36206, (Consolidated)
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted June 8, 2001--Seattle, Washington
Filed September 6, 2001
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted]
 Counsel Sidney R. Snyder, Jr., Esq., Merrick, Hofstedt & Lindsey, Seattle, Washington; John H. Beisner, Esq., O'Melveny & Myers, Llp, Washington, D.C., for defendant-appellant Citibank.
 Steve W. Berman, Esq., Hagens and Berman, Seattle, Washington; John H. Alexander, Alexander, Fennerty & Associates, Chicago, Illinois; Michael J. Rosenfeld, Kalb, Rosenfeld & Essig, Commack, New York; Roger W. Kirby, Kaufman, Malchman, Kirby & Squire, New York, New York; James G. Lewis, Los Angeles, California; Michael L. Williams, Williams & Troutwine, Portland, Oregon; Russell Jackson Drake, Cooper, Mitch, Crawford, Kuykendall & Whatley Llc, Birmingham, Alabama, for the plaintiffs-appellees.
 Bruce M. Berman, Natacha D. Steimer, and Christopher R. Lipsett, Wilmer, Cutler & Pickering, Washington, D.C.; Thomas L. Boeder, Esq., Perkins Coie Llp, for defendant Citibank (South Dakota), N.A.
 Appeal from the Decision of the United States District Court for the Western District of Washington William L. Dwyer, District Judge, Presiding D.C. Nos. MD-98-01199-WLD; (lead) CV-97-01293-WLD; CV-98-00151-WLD; CV-98-00152-WLD; CV-98-00153-WLD; CV-98-00226-WLD; CV-98-00817-WLD
 Before: James R. Browning, J. Clifford Wallace, and Thomas G. Nelson, Circuit Judges.
 
 Wallace, Circuit Judge
 
 1
 Ford Motor Company (Ford) and Citibank (South Dakota), N.A. (Citibank) appeal from the district court's order dismissing the consolidated complaint of several underlying state court lawsuits under 28 U.S.C. §§ 1332 for lack of subject matter jurisdiction, and remanding these state suits to the courts from which they were removed. We must decide two questions. First, whether the minimum amount in controversy required to maintain a diversity suit in federal court ($75,000) is present in the consolidated action. We have jurisdiction under 28 U.S.C. §§ 1291 to review the district court's order dismissing the consolidated complaint for lack of subject matter jurisdiction, and we affirm. Second, we must determine whether we have jurisdiction to entertain a challenge to the district court's order remanding the original actions to the state court from which they came. We do not.
 
 I.
 
 2
 In early 1993, Ford and Citibank issued a co-branded Ford/ Citibank credit card that offered cardholders the opportunity to save on the purchase or lease of a new Ford vehicle through a usage-incentive program. Under the program cardholders earned a 5% rebate on each purchase made using the Ford/ Citibank credit card and could accrue a maximum of $700 in rebates per year (representing $14,000 in purchases) over a five-year period, for a maximum possible rebate of $3,500, redeemable toward the purchase or lease of certain Ford vehicles. On December 31, 1997 -less than five years after the program's inception -Ford and Citibank terminated the rebate accrual feature of the Ford/Citibank credit card.
 
 
 3
 Six state actions were filed in Washington, Oregon, California, Illinois, Alabama, and New York, alleging generally that Ford and Citibank misrepresented or withheld information about the nature and duration of the rebate program and wrongfully discontinued it. Ford and Citibank removed each case to federal district court on the basis of diversity jurisdiction, then petitioned the Judicial Panel on Multidistrict Litigation (Panel) to consolidate and transfer the cases to a single district court for pre-trial proceedings, pursuant to 28 U.S.C. §§ 1407. "Under 28 U.S.C. §§ 1407,[the Panel] is authorized to transfer civil actions pending in more than one district involving one or more common questions of fact to any district court for coordinated or consolidated pretrial proceedings upon its determination that transfer `will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions.' " Fed. Judicial Ctr., Moore's Federal Practice Manual for Complex Civil Litigation §§ 31.13 (3d ed. 2000).
 
 
 4
 On January 8, 1998, and June 12, 1998, the Panel transferred the six removed actions to the Western District of Washington "for coordinated or consolidated pretrial proceedings." The transferee district court consolidated the cases on July 16, 1998, and a consolidated complaint was filed on August 5, 1998. Purporting to sue on behalf of a nationwide class of six million Ford/Citibank cardholders, the consolidated plaintiffs alleged state law causes of action for breach of contract, unjust enrichment and consumer fraud, and plead diversity jurisdiction under 28 U.S.C. §§ 1332(a). The consolidated plaintiffs sought relief in the form of specific performance, disgorgement, and compensatory and punitive damages.
 
 
 5
 After transfer and consolidation, Ford and Citibank moved to dismiss the consolidated complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and the district court denied the motion. The consolidated plaintiffs moved for class certification. However, after discovery was completed and the issue had been fully briefed by the parties, the district court deferred judgment on class certification and instead issued an order to show cause why "the consolidated action . . . should not be dismissed for lack of jurisdiction, and why[the six underlying actions] should not be . . . remanded to state court." Though neither party had challenged the district court's jurisdiction at any point in the proceedings, the district judge properly raised sua sponte the issue of whether the consolidated complaint alleged more than $75,000 in controversy under 28 U.S.C. §§ 1332(a).
 
 
 6
 Ford and Citibank filed a memorandum in support of jurisdiction, raising three reasons why the amount in controversy requirement was met: (1) the cost of compliance with the request for injunctive relief would exceed $75,000; (2) the consolidated plaintiffs have a common and undivided interest in their compensatory damages claim, which exceeds $75,000; and (3) the consolidated plaintiffs have a common and undivided interest in their punitive damages claim, which exceeds $75,000.
 
 
 7
 In an order dated October 29, 1999, the district court held that it "lack[ed] subject matter jurisdiction over the consolidated complaint and the six removed cases." The district court dismissed the consolidated complaint for lack of jurisdiction and remanded the underlying actions to the several state courts of origin.
 
 
 8
 Pursuant to the Panel's rules of procedure, see R.P.J.P.M.L. 7.6(a), the district court sent a copy of the order to the Panel on November 8, 1999. In the attached letter, the district judge explained:
 
 
 9
 [T]his order dismisses, for lack of subject matter jurisdiction, a consolidated complaint filed by the plaintiffs in this court. The dismissal of the consolidated complaint necessitated a disposition of the six original actions filed in state court, removed to federal court on the basis of diversity of citizenship, and transferred by the Panel to the [Western District of Washington] for coordinated or consolidated pretrial proceedings. For lack of subject matter jurisdiction, the order remands those cases to state court.
 
 
 10
 Ford and Citibank timely appealed, challenging both the district court's dismissal of the consolidated complaint and its remand of the underlying actions.
 
 II.
 
 11
 We must first consider whether we have jurisdiction to review the district court's order which states "[t]he consolidated complaint is hereby dismissed for lack of jurisdiction." Because the district court's order dismissed the"complaint" rather than the "action," the question arises whether the order is final and appealable. "Ordinarily an order dismissing a complaint but not dismissing the action is not appealable under section 1291 unless circumstances make it clear that the court concluded that the action could not be saved by any amendment of the complaint." Hoohuli v. Ariyoshi, 741 F.2d 1169, 1171 n.1 (9th cir. 1984). However, "[i]f it appears that the district court intended the dismissal to dispose of the action, it may be considered final and appealable. " Id. (emphasis added).
 
 
 12
 Here, the record clearly indicates that the district court intended to dispose of the consolidated action. First, the dismissal did not grant leave to amend. See id.; see also Gerritsen v. de la Madrid Hurtado, 819 F.2d 1511, 1514 (9th Cir. 1987) ("Failure to allow leave to amend supports an inference that the district court intended to make the order final."). We are also aided by the district court's contemporaneous letter to the Panel which demonstrates a clear intention to terminate the case. The district court expressly sent the letter "[i]n compliance with R.P.J.P.M.L. 7.6(a)," which provides that "[a]ctions terminated in the transferee district court by valid judgment . . . shall not be remanded by the Panel and shall be dismissed by the transferee district court. The clerk of the transferee court shall send a copy of the order terminating the action to the Clerk of the Panel . . . ." (Emphasis added).
 
 
 13
 Although a specific dismissal of the action would have been preferable, we conclude in this case that we have jurisdiction to review the dismissal order under 28 U.S.C. §§ 1291.
 
 III.
 
 14
 We review de novo a district court's dismissal for lack of subject matter jurisdiction. Brady v. United States, 211 F.3d 499, 502 (9th Cir. 2000). The party asserting federal jurisdiction bears the burden of proving the case is properly in federal court. McNutt v. General Motors Acceptance Corp. , 298 U.S. 178, 189 (1936). Here, diverse citizenship is uncontested. Thus, the sole jurisdictional question is whether the minimum amount in controversy required to maintain a diversity suit in federal court is present. As the parties asserting diversity jurisdiction, Ford and Citibank bear the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000. See Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).
 
 
 15
 On appeal, Ford and Citibank do not contend that any plaintiff has an individual damages claim exceeding $75,000. Nor do they contend that the individual plaintiffs' damages claims may be aggregated to satisfy the jurisdictional amount requirement. It is undisputed on appeal that the individual plaintiffs do not have a common and undivided interest in a claim for damages.
 
 
 16
 However, compensatory damages are not the only form of relief sought. The consolidated plaintiffs also seek injunctive relief, disgorgement, and punitive damages. Ford and Citibank contend that each of these claims provides the requisite jurisdictional amount.
 
 A.
 
 17
 Ford and Citibank first argue that their cost of compliance with the request for injunctive relief carries this case over the jurisdictional amount threshold. Relying upon our decision in Sanchez, 102 F.3d at 405, they contend that the amount in controversy requirement is satisfied if either party can gain or lose the jurisdictional amount (the so-called "either viewpoint" rule). Here, the consolidated plaintiffs seek specific performance of the rebate program, and Ford and Citibank submit that it will cost them more than $75,000 to reinstate and administer the rebate accrual feature of the Ford/Citibank credit card.
 
 
 18
 Under the "either viewpoint " rule, the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce. See Ridder Bros. Inc., v. Blethen, 142 F.2d 395, 399 (9th Cir. 1944) (holding that for purposes of calculating amount in controversy, "[t]he value of the thing sought to be accomplished by the action may relate to either or any party to the action") (internal quotation omitted). In other words, where the value of a plaintiff's potential recovery (in this case, a maximum of $3,500) is below the jurisdictional amount, but the potential cost to the defendant of complying with the injunction exceeds that amount, it is the latter that represents the amount in controversy for jurisdictional purposes.
 
 
 19
 In Sanchez, we observed en banc that " Ridder . . . rejected the `plaintiff-viewpoint' rule, which states that courts attempting to determine the value of a claim for purposes of the amount in controversy requirement should look only to the benefit to the plaintiff, rather than to the potential loss to the defendant." 102 F.3d at 405 n.6. Ridder stated that in suits involving equitable relief, "if the value of the thing to be accomplished [is] equal to the dollar minimum of the jurisdictional amount requirement to anyone concerned in the action, then jurisdiction [is] satisfied." 142 F.2d at 398. We did not apply Ridder in Sanchez, however, because the party with the burden of proof failed to provide any evidence to determine the extent of the loss that it would incur by an injunction.
 
 
 20
 But Ridder and Sanchez are single-plaintiff cases. Here, there are multiple plaintiffs seeking to sue on behalf of a putative class of six million individuals. We have specifically declined to extend the "either viewpoint rule " to class action suits. See Snow v. Ford Motor Co., 561 F.2d 787, 790 (9th Cir. 1977). This limitation on the rule should apply regardless of whether the requested class has been certified. Indeed, logic would dictate that it should apply to all multi-party complaints. While "[i]t may seem paradoxical to[decline jurisdiction] in the multiplaintiff setting," where the potential loss to defendants typically is well beyond the jurisdictional amount threshold, "it is implicit in the rule that forbids aggregation of class members' separate claims that it will sometimes be more difficult for a [party asserting federal jurisdiction] to establish the minimum amount of controversy in a multiplaintiff case than in a much smaller single-plaintiff case." In re Brand Name Prescription Drugs Antitrust Litig., 123 F.3d 599, 609 (7th Cir. 1997).
 
 
 21
 In Snow, we acknowledged the inherent conflict between the "either viewpoint" rule and the non-aggregation rule when calculating the amount in controversy in class action suits seeking equitable relief, and determined that the former must yield. Snow, 561 F.2d at 788-91. In light of the Supreme Court's decisions in Snyder v. Harris, 394 U.S. 332 (1969) and Zahn v. International Paper Co., 414 U.S. 291 (1973), prohibiting aggregation, we declined to apply Ridder in a class action suit seeking damages and injunctive relief, stating that "[in class actions,] the threshold question is aggregation, and it must be resolved affirmatively before total detriment [to the defendant] can be considered." Id. at 790. Otherwise, the principle of Snyder and Zahn would be subverted, i.e., plaintiffs with minimal damages could dodge the non-aggregation rule by praying for an injunction. See id. at 791. We recognized that " `[t]otal detriment' is basically the same thing as aggregation," and held that "where the equitable relief sought is but a means through which the individual claims may be satisfied, the ban on aggregation applies with equal force to the equitable as well as the monetary relief." Id. at 790 (internal quotation omitted).
 
 
 22
 Thus, under Snow, "the proper focus [in multiple plaintiff cases] is not influenced by the type of relief requested, but rather . . . depend[s] upon the nature and value of the right asserted." Id. Put differently, "[w]hatever the form of relief sought, each plaintiff's claim must be held separate from each other plaintiff's claim from both the plaintiff's and the defendant's standpoint. The defendant in such a case is deemed to face multiple claims for injunctive relief, each of which must be separately evaluated." Brand Name, 123 F.3d at 610, citing Snow, 561 F.2d at 790. The question then becomes whether each plaintiff is asserting an individual right or, rather, together the plaintiffs "unite to enforce a single title or right in which they have a common and undivided interest. " Snyder, 394 U.S. at 335. If it is the latter, we may then look to the "either viewpoint" rule to determine jurisdiction. If it is the former, the test is the cost to the defendants of an injunction running in favor of one plaintiff. See Brand Name, 123 F.3d at 610.
 
 
 23
 In an effort to carry this case across the amount in controversy threshold in the face of Snow, Ford and Citibank first contend that the consolidated plaintiffs have a"common and undivided interest" in the injunctive relief they seek, and compliance will cost substantially more than $75,000. Second, they aver that it will cost them more than $75,000 to reinstate and administer the rebate accrual program whether it is done for one plaintiff or six million. Thus, they allege that the "either viewpoint" rule may be applied in this case without running afoul of the non-aggregation principle of Snyder and Zahn.
 
 1.
 
 24
 Turning to the first point, we are helped to understand the meaning of "common and undivided interest" by Gilman v. BHC Sec., Inc., 104 F.3d 1418, 1423 (2d Cir. 1997), where the court explained that "the `paradigm cases' allowing aggregation of claims `are those which involve a single indivisible res, such as an estate, a piece of property (the classic example), or an insurance policy. These are matters that cannot be adjudicated without implicating the rights of everyone involved with the res.' " Id. (citation omitted). That does not fit the case before us in which the claims arising out of the termination of the rebate program do not implicate a"single indivisible res," and could be adjudicated on an individual basis because the consolidated plaintiffs (and putative class members) have no common and undivided interest in accruing rebates under the program. Each plaintiff charged purchases and accrued rebates individually, not as a group. Thus, prior to litigation, they shared no common interest. As Ford and Citibank correctly stated in their memorandum opposing class certification, "[t]his case, after all, does not involve a common fund or a joint interest among cardholders. Instead, it involves a collection of individual claims based on individual patterns of consumer purchasing decisions." They concluded that "[b]ecause the [putative] class members in this case do not in any sense possess joint ownership of, or an undivided interest in a common res, their claims . . . are separate and distinct." Id. at 1424.
 
 
 25
 In spite of this earlier concession, Ford and Citibank now urge us to adopt Loizon v. SMH Societe Suisse de Microelectronics, 950 F. Supp. 250 (N.D. Ill. 1996), and hold that the putative class members have a "common and undivided" interest in the "opportunity to accrue rebates " because the injunctive relief requested -reinstating the rebate accrual program -necessarily would benefit the putative class as a whole. There, plaintiffs sought injunctive relief, requiring the defendants to notify all putative class members of the potential dangers of wearing a line of watches manufactured by the defendants that contained a radioactive isotope. Id. at 252-53. The court found that the injunctive relief requested -corrective advertising -would benefit the class as a whole and, thus, held that the putative class members had a"common and undivided interest" because "only the class, and not individual class members, could request the injunctive relief. " Id. at 254.
 
 
 26
 We are foreclosed from adopting Loizon because our decision in Snow tells us that "the proper focus . . . is not . . . the type of relief requested, but rather . . . the nature and value of the right asserted." 561 F.2d at 790. Here, the consolidated plaintiffs assert the right to accrue rebates under the canceled program. That right is distinct to each plaintiff, is based on his or her individual contractual relationship with Ford and Citibank, and is worth no more than $3,500. "The fact that the plaintiff[s] seek [specific performance ] does not through shear [sic] alchemy transform a cause of action which will provide marginal benefits . . . into a claim that meets the . . . amount in controversy requirement." Smiley v. Citibank, 863 F. Supp. 1156, 1164 (C.D. Cal. 1993), relying on Snow, 561 F.2d at 791. As we held earlier, to hold otherwise would permit plaintiffs to circumvent the non-aggregation rule simply by seeking equitable relief.
 
 
 27
 Therefore, we hold that the consolidated plaintiffs in this case have not "unite[d] to enforce a single title or right in which they have a common and undivided interest. " Snyder, 394 U.S. at 335. "[T]he equitable relief sought [in this case] is but a means through which the individual claims may be satisfied," Snow, 561 F.2d at 790, and no plaintiff has an individual claim worth more than $75,000.
 
 2.
 
 28
 The second effort to overcome Snow is the argument that because the cost of an injunction running in favor of one plaintiff would exceed $75,000, aggregating the cost of compliance is unnecessary to satisfy the amount in controversy requirement. In other words, while the monetary benefit to an individual plaintiff of reinstating the rebate accrual program would be relatively insubstantial, the fixed costs to Ford and Citibank of reinstating and maintaining the program would be the same whether it is done for one plaintiff or for six million. Thus, Ford and Citibank assert that because the non-aggregation rule would not be violated if their fixed administrative costs were used to establish the amount in controversy requirement, we may look to the "either viewpoint" rule to establish the jurisdictional amount.
 
 
 29
 At first blush, this argument appears consistent with Snow. However, it is fundamentally violative of the principle underlying the jurisdictional amount requirement -to keep small diversity suits out of federal court. If the argument were accepted, and the administrative costs of complying with an injunction were permitted to count as the amount in controversy, "then every case, however trivial, against a large company would cross the threshold." Brand Name , 123 F.3d at 610. "It would be an invitation to file state-law nuisance suits in federal court." Id. Therefore, we hold that the amount in controversy requirement cannot be satisfied by showing that the fixed administrative costs of compliance exceed $75,000.
 
 B.
 
 30
 Next, the defendants contend that the consolidated plaintiffs' unjust enrichment claim, which seeks disgorgement of "billions of dollars" of "ill-gotten benefit[s]," satisfies the amount in controversy requirement. Relying upon Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft, 48 F.Supp.2d 37 (D.D.C. 1999), Ford and Citibank argue that "the plaintiff class has a collective right to a disgorgement in the amount of the unjust enrichment." Id. at 41. Several district courts have held that a claim for disgorgement falls within the "common and undivided interest" exception to the non-aggregation rule. See, e.g., In re Microsoft Corp. Antitrust Litig., 127 F. Supp.2d 702, 720 (D.Md. 2001); In re Cardizem CD Antitrust Litig., 90 F. Supp.2d 819, 828-29 (E.D. Mich. 1999); Aetna, 48 F. Supp.2d at 41; but see, Arnold v. General Motors Corp., 1998 WL 827726 at *2 (N.D. Cal. Nov. 18, 1998), relying on Snow, 561 F.2d at 790. These cases "rest their holdings upon the premise that disgorgement is a form of relief separate from, and independent of, individual damage recovery and that disgorgement `would inure to the benefit of the class rather than vindicate any alleged violations of individual rights.' " Microsoft, 127 F. Supp.2d at 720, quoting Aetna, 48 F. Supp.2d at 41.
 
 
 31
 The Second Circuit rejected this argument, emphasizing that "what controls is the nature of the right asserted, not whether successful vindication of the right will lead to a single pool of money that will be allocated among the plaintiffs." Gilman, 104 F.3d at 1427. The court held that, despite its cloak of collectiveness, the plaintiffs' disgorgement claim was not aggregable for jurisdictional purposes because"[t]he claim remains one on behalf of separate individuals for the damage suffered by each due to the alleged conduct of defendant." Id. (internal quotation omitted). That is, simply because the plaintiffs request disgorgement of "all benefits" does not establish that the right which they seek to enforce is collective.
 
 
 32
 We agree with the Second Circuit. We point out that this position is consistent with our decision in Snow, where, as explained previously, we held that the proper focus in determining whether class action claims may be aggregated is not the type of relief requested, but rather the nature and value of the right asserted. 561 F.2d at 790. In the disgorgement context, the germane question becomes whether "the plaintiffs' claims are consistent with a demand for damages based on their individual transactions with [the defendants]." Gilman, 104 F.3d at 1425 n.8.
 
 
 33
 Applying this to the case before us is not difficult. The "ill-gotten benefit" alleged in the consolidated plaintiffs' unjust enrichment claim is comprised of: (1) the"profit[s] from . . . interest charges and intercharge fees[Ford and Citibank] collected as a result of the billions of dollars Class members, including plaintiffs, charged on their Ford Citibank Cards," which they would not have used but for the canceled rebate accrual feature; and (2) the "expiration of billions of dollars in rebates earned by plaintiffs and class members." The complaint thus demonstrates that the consolidated plaintiffs have no common and undivided interest in the disgorgement of the alleged ill-gotten benefits. They charged purchases and accrued rebates individually, not as a group. Thus, prior to litigation, they shared no common interest. Each cardholder could have brought a separate and individual action to recover the alleged benefits. Thus, "[t]he claim remains one on behalf of separate individuals for the damage suffered by each due to the alleged conduct of the defendant[s]." Id. at 1427.
 
 
 34
 In seeking disgorgement, the consolidated plaintiffs do not unite to enforce a "single title or right in which they have a common and undivided interest." Snyder, 394 U.S. at 335. Therefore, the total disgorgement amount requested cannot be used to satisfy the jurisdictional amount requirement.
 
 C.
 
 35
 Finally, Ford and Citibank argue that the claim for punitive damages satisfies the jurisdictional amount requirement because the punitive damages sought in this case are a single collective right in which plaintiffs have a common and undivided interest. In support of their argument, they rely on the Fifth and Eleventh Circuit's decisions in Allen v. R&H Oil and Gas Co., 63 F.3d 1326 (5th Cir. 1995), and Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353 (11th Cir. 1996), and our decision in In re N. Dist. of Cal. Dalkon Shield IUD Prods. Liab. Litig., 693 F.2d 847 (9th Cir. 1982).
 
 
 36
 First, Allen and Tapscott, which held that punitive damages may be aggregated in class suits, have been disavowed by their respective circuits. See H&D Tire and Auto. Hardware, Inc. v. Pitney Bowes, Inc., 227 F.3d 326, 329-30 (5th Cir. 2000) (holding that Allen is not valid precedent because it conflicts with an earlier and, thus, controlling, pre-Fifth Circuit split opinion barring aggregation of punitive damages to establish diversity jurisdiction); Cohen v. Office Depot, Inc., 204 F.3d 1069, 1073-77 (11th Cir. 2000) (holding that Tapscott is not valid precedent for same reason).
 
 
 37
 Second, the defendants contend that in Dalkon Shield, we "implicitly [held] that punitive damages may be aggregated for [jurisdictional] purpose[s]." They are wrong. In Dalkon Shield, we vacated the district court's class certification order but were silent on the issue of subject matter jurisdiction. The district court in Dalkon Shield had held that it had jurisdiction because, "[i]n the face of plaintiffs' allegations concerning punitive damages, [the] court cannot say to a legal certainty that the total award will not yield more than [the jurisdictional amount] to each successful claimant." In re N. Dist. of Cal. Dalkon Shield IUD Prods. Liab. Litig., 526 F. Supp. 887, 910 (N.D. Cal. 1981). The district court went on to state that "[t]he claims before this court for an award of punitive damages also satisfy the jurisdictional amount requirement . . . [because] the plaintiffs . . . have a common and undivided interest in the recovery of punitive damages against the corporate defendant." Id. at 910-911. Because the district court's jurisdictional determination was disjunctive, our silence on the issue cannot be read as an implicit endorsement of the latter ground.
 
 
 38
 Therefore, because we have not squarely addressed the issue, the question of whether punitive damages may be attributed in toto to each member of a putative class is a matter of first impression in this circuit. After the Fifth and Eleventh Circuit's retractions of Allen and Tapscott, all of the circuits that have considered the question now have answered in the negative. See Martin v. Franklin Capital Corp. , 251 F.3d 1284, 1292 (10th Cir. 2001); Smith v. GTE Corp. , 236 F.3d 1292, 1301 (11th Cir. 2001); Pitney Bowes, Inc. , 227 F.3d 326, 329-30 (5th Cir. 2000); Brand Name, 123 F.3d at 608-09 (7th Cir.); Gilman, 104 F.3d at 1431 (2nd Cir.). This view squares with our analogous jurisdictional amount decisions. See Snow, 561 F.2d at 790 (holding that the equitable relief sought by a class may not be aggregated where each class member's claim is separate and distinct); Goldberg v. CPC International, Inc., 678 F.2d 1365, 1367 (9th Cir. 1982) (holding that attorneys' fees sought by class members cannot be aggregated for purposes of determining the amount in controversy).
 
 
 39
 Our analysis is substantially similar to our discussion of the disgorgement remedy, and the focus remains, as it must in light of Snyder and Zahn, on whether the consolidated plaintiffs and putative class members unite to assert a single title or right. Though the consolidated plaintiffs and putative class members in this case
 
 
 40
 may indeed share an interest in receiving [punitive] damages . . . that has nothing to do with whether--prior to litigation -they jointly held a single title or right in which each possessed a common and undivided interest. It is irrelevant whether successful vindication of claims would create a single pool of recovery to be allocated among multiple plaintiffs; a common interest in a pool of funds is not the type of interest that permits aggregation of claims under the "common fund" doctrine.
 
 
 41
 Gilman, 104 F.3d at 1430. Or, as the Seventh Circuit stated in Brand Name, "the right to punitive damages is a right of the individual plaintiff, rather than a collective entitlement of the victim's of the defendant's misconduct" because "[a] plaintiff's award of punitive damages is not limited by awards made to previous plaintiffs complaining of the same act of the defendant." 123 F.3d at 608-09; see also, Allen, 63 F.3d at 1334. Each consolidated plaintiff and class member could bring an individual action for punitive damages and have his or her rights adjudicated without implicating the rights of every other person claiming such damages. See Gilman, 104 F.3d at 1430. "Claims for punitive damages, like claims for compensatory damages, are brought together in a class action for the convenience of the plaintiffs," not because the plaintiffs share a common and undivided interest in a single, indivisible res. See id.
 
 
 42
 We join our sister circuits and hold that "punitive damages asserted on behalf of a [putative] class may not be aggregated for jurisdictional purposes where, as here, the underlying cause of action asserted on behalf of the class is not based upon a title or right in which the plaintiffs share, and as to which they claim, a common interest." Gilman, 104 F.3d at 1431. "To hold otherwise . . . would eviscerate the holdings of Snyder and Zahn and would run counter to the strict construction of the amount-in-controversy requirement those cases mandate." Id.
 
 
 43
 For the foregoing reasons, we hold that Ford and Citibank have not met their burden of establishing that the jurisdictional amount in this case exceeds $75,000. The district court properly dismissed the consolidated complaint for lack of subject matter jurisdiction.
 
 IV.
 
 44
 Last, Ford and Citibank contend that the district court erred when, after dismissing the consolidated complaint for lack of jurisdiction, it remanded the six underlying actions to their respective state courts of origin. They argue that the district court's dismissal of the consolidated complaint simultaneously terminated the underlying actions because the consolidated complaint superseded all previous complaints filed by the plaintiffs, rendering them "non-existent. " Thus, the defendants assert that dismissing the consolidated complaint left the district court with nothing to remand and no authority to "revive" the underlying actions.
 
 
 45
 We first test our own jurisdiction: is the district court's remand order subject to our review? 28 U.S.C. §§ 1447(d) generally forbids appellate review of remand orders:"An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise. " However, the Supreme Court has interpreted section 1447(d) to prohibit "only remand orders issued under §§ 1447(c). " Thermtron Prods., Inc. v. Hermansdorfer, 423 U.S. 336, 346 (1976) (abrogated on other grounds by Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (1996)). That is, remand orders based upon any defect in removal or lack of subject matter jurisdiction are immune from review. See 28 U.S.C. §§ 1447(c); Thermtron, 423 U.S. at 351.
 
 
 46
 Here, the district court specifically held that it "lack[ed] subject matter jurisdiction over the consolidated complaint and the six removed cases" because Ford and Citibank failed to satisfy the jurisdictional amount requirement of 28 U.S.C. §§ 1332(a). (Emphasis added). Therefore, it dismissed the consolidated compliant and, pursuant to section 1447, remanded the six underlying actions to state court. Thus, it would appear clear that we are prohibited from reviewing the district court's remand order under section 1447(d).
 
 
 47
 However, Ford and Citibank argue that the remand order is not immune from our review because the district court did not, in fact, base its decision to remand on a lack of jurisdiction. See Thermtron, 423 U.S. at 350 (holding that the prohibition against review does not extend to remand orders entered on grounds not provided by section 1447). They contend that the district court's letter to the Panel"made clear that the remand component of its order was occasioned by docket-management considerations rather than by any jurisdictional finding." This is simply wrong. The letter expressly stated that "for lack of subject matter jurisdiction, the order remands [the underlying] cases to state court. " (Emphasis added) There is not a word about docket management, or any other ground not provided by section 1447. Thus, the Thermtron exception does not apply.
 
 
 48
 Next, Ford and Citibank argue that they do not appeal the propriety of the district court's jurisdictional decision with respect to the underlying cases -which section 1447(d) would prohibit -but rather, they dispute the district court's power to render the decision in the first place. They contend that because "[t]he consolidated complaint superseded each of the original complaints, effectively establishing a single lawsuit," dismissal of the consolidated complaint terminated the underlying actions too. Thus, they argue, the district court erred by remanding "non-existent" actions to state court.
 
 
 49
 Because this argument takes aim at the district court's authority to issue the remand order, we have jurisdiction to address the narrow question whether the consolidated federal complaint superseded the underlying state actions in such a way that they were in effect non-existent. See N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034, 1038 (9th Cir. 1995) ("[U]nder Thermtron, we have jurisdiction to decide whether a district court has the power to do what it did in issuing a remand order, although we cannot examine whether a particular exercise of power was proper.") (internal quotations omitted).
 
 
 50
 Ford and Citibank begin their argument with the premise that a consolidated complaint is "akin to an amended complaint," which "supersedes the original, the latter thereafter being treated as non-existent." Loux v. Rhay , 375 F.2d 55, 57 (9th Cir. 1967). They thus contend that the consolidated complaint amended the original state complaints, rendering them "non-existent." However, they provide no authority for this proposition. The cases on which they rely merely stand for the unremarkable propositions that: (1) an amended complaint supersedes an original and (2) in a consolidated action, a consolidated complaint is the operative pleading and supersedes all previously filed complaints. No authority supports the contention that a consolidated complaint touches or disturbs underlying state claims.
 
 
 51
 Nor is there anything cited to us in the record that demonstrates the district court meant for the complaints in the remand cases to disappear. On the contrary, the plaintiffs "consolidate" their efforts into one document which becomes the operative pleading. No court order did anything more than this. Once that umbrella complaint was dismissed, it left the underlying state removed complaints intact. Therefore, the district court did not exceed its authority in remanding the underlying removed actions to state court and, pursuant to section 1447(d), we lack jurisdiction to review its decision.
 
 AFFIRMED IN PART AND DISMISSED IN PART